## A. RUSSO & CO. v. UNITED STATES et al.
### No. 5579.

Circuit Court of Appeals, Fifth Circuit.
April 14, 1930.

Rehearing Denied May 12, 1930.

40

Eberhard P. Deutsch, of New Orleans, La. (Single & Single, of New York City, and Deutsch & Kerrigan, of New Orleans, La., on the brief), for appellant.

Edouard F. Henriques, Sp. Asst. in Admiralty to Atty. Gen., and W. B. Spencer, Jr., Asst. U. S. Atty., both of New Orleans, La. (W. I. Connelly, of New Orleans, La., Atty. for United States Shipping Board Merchant Fleet Corporation, on the brief), for appellee United States.

R. E. Milling, Jr., of New Orleans, La. (Milling, Godchaux, Saal & Milling, of New Orleans, La., on the brief), for appellee Missouri Pac. R. Co.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

FOSTER, Circuit Judge.

Appellant filed a libel against the United States and the Missouri Pacific Railroad Company to recover $1,765 for damages to a shipment of 1,000 cases of peeled tomatoes from Palermo, Italy, to New Orleans, by the steamship Scantic, and from that port to Chicago by the railroad, alleged to have been caused by sea water on the ocean voyage. The railroad company filed an exception challenging the jurisdiction of the court to entertain the claim in admiralty. The United States filed an exception setting up no cause of action and laches, and that the right of

action was barred by limitations in the bill of lading.

A hearing was had on the pleadings and two bills of lading filed as exhibits and a stipulation as to the time of delivery of the goods.

The material facts shown are these. The tomatoes were shipped from Palermo by S. A. Henry Coe & Clerici, consigned to the order of Norton England, assistant freight agent of the Missouri Pacific Lines at New Orleans, and a bill of lading was issued, dated October 12, 1927, and signed by the Union Gulf Steamship Company, Inc., as agents for the United States Shipping Board. This bill of lading contained the following clause:

"Notice of loss, damage, or delay must be given in writing to the vessel's agent within thirty (30) days after the removal of the goods from the custody of the vessel, or, in case of failure to make delivery within thirty (30) days after the goods should have been delivered: Provided, That notice of apparent loss or damage must be given before the goods are removed from the custody of the vessel, and proper notation made on the receipt given to the vessel for the goods shall constitute the notice herein required. Written claim for loss, damage or delay must be filed with the vessel's agent within six (6) months after giving such written notice. Unless notice is given and claim filed as above provided, neither the vessel, her owner, nor agent shall be liable. No suit to recover for loss, damage, delay, or failure to make delivery shall be maintained unless instituted within one year after the giving of written notice as provided herein."

On October 13, the next day, the Missouri Pacific, through an agent in Palermo, issued a through bill of lading for the goods from Palermo to Chicago, consigned to shipper's order, notify A. Russo & Co., Chicago (appellant). This second bill of lading was divided into two sections, the material parts of which are as follows:

"Section I.

"With Respect to Carriage up to American Seaboard.

"The Missouri Pacific Lines agrees to cause the property above described to be transported by carriers to be designated by the shipper, or in default of such designation to be selected by the Railroad Company or and on behalf of the shipper or owner subject to the terms and conditions of the said carriers' several receipts and bills of lading including any special clauses printed, written or stamped thereon from Palermo per steamer "Scantic" or other steamer to the port of New Orleans and there to be delivered to the Missouri Pacific Lines. The Missouri Pacific Lines shall hold for the benefit of shipper or owner all receipts and bills of lading issued by participating carriers but shall not be liable for any loss, damage or delay to said property and it is agreed that any claim or demand for loss, damage, or delay shall be made against the carrier in possession of the property at the time such loss, damage or delay occurs. The holder hereof expressly ratifies and accepts all of the conditions set forth herein and waives any right to prior inspection of bill of lading or receipt of any carrier participating in the transportation of the property covered thereby. The shipper or owner assumes all insurable risks whether due to perils of the sea or otherwise. * * *

"Section II.

"With Respect to Carriage from American Seaboard to Destination.

"The Missouri Pacific Lines agrees that upon delivery to it, at ship's side or steamship dock or at any of its wharves, of the property above described, to receive the same subject to the classification and tariffs on file with the Interstate Commerce Commission in effect upon the date of such delivery and to carry said property subject to said classification and tariffs and at the rate of freight therein provided for transportation, subject to conditions of the bill of lading printed on the back hereof, to the usual place of delivery at the destination thereof if on its route, otherwise to deliver it to another carrier on the route to the said destination."

This bill of lading also contained the following clause:

"Claims for loss, damage, or injury to property must be made in writing to the originating or delivering carrier or carriers issuing this bill of lading within six months after delivery of the property. * * * *"

Delivery from the ship to the railroad at New Orleans was completed November 11, 1927, and notice of apparent damage was given at that time. A claim for damage was made to the agent of the ship on May 17, 1928. The goods were delivered to appellant at Chicago, November 21, 1927. No notice of damage was given after the delivery in Chicago. The libel was not filed until December 14, 1928.

The District Court sustained the exceptions of both respondents and dismissed the libel.

It is plain that the claim for damages was not made until more than six months after the notice of apparent damage was given to the ship, and less than six months after the delivery in Chicago. It is contended that the limitation began to run from the delivery at Chicago, and therefore the claim was in time. There is no doubt that a railroad company may contract for a movement of freight over connecting carriers by land and a carrier by water for a shipment to or from a foreign country, and, if it does so, without reasonable limitation of its liability, it may be held for delay or damage to the goods occurring at any point, whether on its own line or that of a connecting carrier. But it is also true that a carrier may make itself a party to a through shipment and limit its responsibility to damages and delay occurring on its own line after it has actually received the goods. Northern Pac. Ry. Co. v. Am. Trading Co., 195 U. S. 439, 25 S. Ct. 84, 49 L. Ed. 269; Mo. Pac. Ry. Co. v. McFadden, 154 U. S. 155, 14 S. Ct. 990, 38 L. Ed. 944; Railway Company v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Myrick v. Michigan Cent. R. Co., 107 U. S. 102, 1 S. Ct. 425, 27 L. Ed. 325; Oregon-Wash. R. & Nav. Co. v. McGinn, 258 U. S. 409, 42 S. Ct. 332, 66 L. Ed. 689.

The bills of lading constituted the entire contract of carriage in this case. Construing them together, as must be done, it is evident that the railroad intended to act only as the agent of the owner of the goods, whether shipper or holder of the bill of lading it issued, in respect of the ocean voyage. It follows as a necessary conclusion that the Missouri Pacific Company was not liable for any damage to the goods occurring while in the custody of the ship.

Notice of apparent damage is not equivalent to a claim for damage. The apparent damage might have proved on further inspection to have been too slight to warrant a claim. The carrier was entitled to have the claim presented with sufficient detail as to the nature of the damage and the amount of loss to warrant payment if the claim were well founded. The provisions of the steamship bill of lading were reasonable and must be given effect. Bombace v. Am. Bauxite Co., 39 F.(2d) 867, decided April 7, 1930; Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543; Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948.

Furthermore, as libelant has no claim against the railroad company, the limitation for bringing suit would apply. As suit was not filed until more than a year had elapsed after the delivery, either at New Orleans or Chicago, the suit was barred.

A close question is presented as to whether the claim against the railroad is cognizable in admiralty. The damage occurred on the ocean voyage, and the railroad company had made itself a party to that transportation, although in a limited way. So far as the consignee was concerned, the goods moved on the bill of lading issued by the railroad company. That document was the muniment of title required to secure delivery. We think there was jurisdiction in admiralty to determine liability as against both respondents.

That the libel as against the railroad company was dismissed for want of jurisdiction does not require a reversal. To do so would be to give effect to a technicality as opposed to a proper disposition of the case on the merits and would serve no good purpose. The hearing on the exceptions had all the elements of a trial on the merits to determine liability. The dismissal of the libel was right on the facts before the court. It is immaterial that as to the railroad it was put upon the wrong ground. The Mabey and Cooper, 14 Wall. 204, 20 L. Ed. 881; The Syracuse, 12 Wall. 167, 20 L. Ed. 382; The Wanata, 95 U. S. 600, 24 L. Ed. 461; Sullivan v. Iron Silver Mining Co., 143 U. S. 431, 12 S. Ct. 555, 36 L. Ed. 214.

The record presents no reversible error.

Affirmed.