### NEWPORT ROLLING MILL CO. v. MISSISSIPPI VALLEY BARGE LINE CO. et al.

### No. 440.

District Court, E. D. Louisiana, New Orleans Division.

June 30, 1943.

Deutsch, Kerrigan & Stiles, of New Orleans, La., for libellant.

Lemle, Moreno & Lemle, of New Orleans, La., for Mississippi Valley Barge Line Co.

Terriberry, Young, Rault & Carroll, of New Orleans, La., for Luckenbach Gulf S. S. Co., Inc.

BORAH, District Judge.

This libel was filed by the Newport Rolling Mill Company against Mississippi Valley Barge Line Company and Luckenbach Gulf Steamship Company, Inc., to recover $500 for damages to a shipment of twenty-eight packages of sheet iron which moved from Cincinnati, Ohio, to New Orleans, Louisiana, by barge, and from that port to Los Angeles, California, by the steamship Florence Luckenbach.

The respondent barge line issued its through bill of lading to libellant on June 21, 1939, acknowledging receipt of the sheet iron packed in metal covered unit packages in apparent good condition. This bill of lading contained the following clause:

"Sec. 10. The Mississippi Valley Barge Line Company assumes responsibility for freight only when in the custody of the Mississippi Valley Barge Line Company.

"Note:—This form may also be used on joint water-and-rail traffic, or on joint all-water traffic in connection with other water carriers, under the following conditions respectively:

\* \* \* \* \* \* \*

"When in possession of water carriers other than the Mississippi Valley Barge Line Company, freight described herein will be subject to contract terms and conditions of said other water carriers bill of lading, tariff provisions, blanket or specific insurance policies, or other contract, rules, regulations, arrangements or agreements as shall be in force and effect on such other water carrier."

The regular bill of lading in use at the time by respondent Luckenbach Gulf Steamship Company, Inc., provided: "17. Neither carrier nor vessel shall be liable for loss, damage, or delay, whether occurring before, during or after loading, transit \* \* \* discharge, delivery or other disposition of the goods, arising from any of the following causes: \* \* \* want of proper cooperage \* \* \* chafing, insufficiency of package in strength or otherwise \* \* \* rust, stain, discoloration, \* \* \* breakage, bending, buckling. \* \* \*"

This bill of lading also contained the following notice of claim clause: "23. All claims for damage to cargo \* \* \* must be presented in writing, disclosing fully the nature and extent thereof, to the shipowner or to the vessel's agent at the port of discharge, before the cargo is removed from the carrier's custody or final receipts signed. Unless presented as above provided, all claims of whatsoever nature and extent shall be waived and no suit shall be maintainable to recover the same. \* \* \*"

On June 23, 1939, respondent barge line's tow No. 860 sailed from Cincinnati with the cargo in question laden on the covered deck of barge No. 104. The voyage was without incident and upon arrival at New Orleans on July 1, 1939, the packages of sheet iron were discharged from the barge and delivered into the custody of Luckenbach Gulf Steamship Company at the latter's open wharf. When deliveries were complete the latter gave a receipt to the former taking certain exceptions to the shipment. These exceptions read:

"28 Bdls. Steel Outer Metal Protective Covering Rusty & Dented.

"Unable to Examine Contents.

"Bundle #23 Received from M. V. B. L. With Covering Cut & Pulled Off End.

"Contents Exposed, Rusty & Slightly Bent.

"Stowed Under Deck of Barge."

However, the fact that bundle No. 23 was delivered by the barge line "with covering cut & pulled off end" is of no significance because this bundle No. 23 was received by the consignee without exception and no allowance was claimed or made for any damage to the sheets therein.

The shipment remained on the unprotected apron of the wharf subject to intermittent rains from July 1, 1939, to July 6, 1939, when it was loaded on the steamship Florence Luckenbach. On July 24, 1939, the shipment arrived at Los Angeles and the sheet iron was delivered to the consignee on the two succeeding days. When the packages were unpacked eight packages of black iron sheets out of the total shipment of twenty-eight packages were found to be badly rusted, whereupon Tuch, a partner of the consignee firm, requested Conklin, a claims inspector for Luckenbach, to come down to the plant and look at the shipment. Conklin testified that the examination which he made at Tuch's request was entirely preliminary; that he and Tuch merely made a casual examination of the piles of sheet iron and that since all of the packages had not been opened and the damaged sheets segregated from the good sheets, he was unable to determine the extent of the damage. Conklin informed the consignee, and to the best of his recollection Tuch, that his company was to be notified when the sheets had been segregated so that he could make a final report showing the nature and extent of the damage, but he never received any further call from the consignee to make a final inspection. Tuch was of the opinion that no arrangements were made at that time which contemplated that Conklin was to be advised of any subsequent inspections, but the witness is obviously in error because Conklin's written report, a copy of which was requested and admittedly received by Tuch, recites that "extent of damage can't be determined until sheets have been segregated for inspection—consignee will call when ready for final inspection. * * *"

It also appears from the testimony of Tuch that his partnership filed no claims; that they did not write Luckenbach that they were making any claims against them, and there is no evidence in this record of any one else having made a written claim against respondents.

The Mississippi Valley Barge Line denies all liability in the premises and urges among other defenses in its answer that no damage occurred to the twenty-eight bundles of sheet iron while they were in its custody. In support of this defense they have pleaded that clause of the bill of lading which provides: "Sec. 10 Mississippi Valley Barge Line Company assumes responsibility for freight only when in the custody of the Mississippi Valley Barge Line Company." And in support thereof maintain that it is well settled in this jurisdiction that a water carrier receiving a shipment for transportation beyond its line "may make itself a party to a through shipment and limit its responsibility to damages and delay occurring on its own line after it has actually received the goods." A. Russo & Co. v. United States, 5 Cir., 40 F.2d 39, 42 and cases there cited.

■ The proof in this cause sustains the allegations of the answer and shows conclusively that the damage did not occur to the shipment while it was in the custody of the Mississippi Valley Barge Line Company. Consequently there is and can be no liability on the part of this respondent and the libel should be dismissed as to it with costs.

The answer of the respondent Luckenbach Gulf Steamship Company, Inc., denies that the contents of the shipment were in good order and condition when received by respondent barge line or when received by it; denies that any damage occurred to the shipment while same was in its possession, and specially sets up as a defense to the claim the notice of claim clause in the bill of lading, supra. As we view the situation, there is no necessity for considering the questions as to whether or not the libellant has sustained the burden of proving that the shipment was in actual internal good order and condition when delivered to respondent barge line or that the rust, an excepted cause under Luckenbach's bill of lading, was caused by the latter's negligence, for these questions become relatively unimportant when viewed in the light of libellant's complete failure to comply with the notice of claim clause contained in Luckenbach's bill of lading.

■ The through bill of lading issued by the barge line provided that the shipment while in the custody of Luckenbach should be subject to the contract terms and conditions of Luckenbach's bill of lading. This clause had the effect of incorporating

in the contract of carriage the ocean carrier's bill of lading by reference, including any requirements in that bill of lading for written notice of claim. Bank of California N. A. v. International Mercantile Marine Co., 2 Cir., 64 F.2d 97, 1933 A.M.C. 719; A. Russo & Co. v. United States, supra. If then the written notice of claim clause of the ocean bill of lading is incorporated in and made a part of the contract of shipment, and if this clause is valid, it follows that libellant has no standing in court, because it must be conceded that there is no evidence in this case that written claim was made. Such a provision is an integral part of the contract between the parties, and if recovery is sought upon the contract, the party seeking to recover must show compliance with its terms, or a waiver or excuse for non-performance. Clauses of this character are valid and binding, if reasonable. The Queen of the Pacific, 180 U.S. 49, 21 S.Ct. 278, 45 L.Ed. 419; Unione Austriaca v. Leon G. Tujague & Co., 5 Cir., 231 F. 427; Bombace v. American Bauxite Company, 39 F.2d 867; A. Russo & Co. v. United States, supra. The purposes of provisions of this character have frequently been commented on by the courts. Thus in The Persiana, 2 Cir., 185 F. 396, 398, it was said: "It has been held that bills of lading may properly contain some reasonable requirements that notice of claim be given, so that the shipowners may know, not merely whether there is damage for which no demand may ever be made, but whether any claim for damages is asserted by the consignee, so that the necessary investigation may be made while the goods are still under the control of the ship."

It is no excuse for non-performance for libellant to now say that it was impossible for the consignee of the cargo involved in this litigation to have complied literally, for it has always been recognized that where literal compliance with the clause is impossible, the consignee is not relieved of compliance, but is obligated to give the required written notice of claim as soon as that can be reasonably done under the circumstances. Jamison v. New York & P. R. S. S. Co., D.C., 241 F. 389; The Turret Crown, 4 Cir., 284 F. 439, 442; The Texas Maru, 2 Cir., 13 F.2d 538, 1926 A.M.C. 1221; The J. L. Luckenbach, 2 Cir., 65 F.2d 570, 1933 A.M.C. 980. The fact that the shipowner knew that some damage had occurred did not excuse the consignee from complying with the written notice of claim clause in the bill of lading.

A. Russo & Co. v. United States, supra. Nor does such knowledge on the part of the shipowner show a waiver by the carrier of written notice of claim as required by the bill of lading. Southern Pac. Co. v. Stewart, 248 U.S. 466, 447, 39 S.Ct. 139, 63 L.Ed. 350.

Concluding as we do that this provision requiring written notice of claim is valid and enforcible and that it was neither complied with by the libellant nor waived by the respondent Luckenbach Gulf Steamship Company, Inc., it follows that the libel should also be dismissed as to this respondent with costs. Findings of fact and conclusions of law as provided by the rule, conforming to the foregoing views, will be signed by the court and filed herein.