**RHINETUBES, INC., Appellant,**

v.

**NORDDEUTSCHER LLOYD et al., Appellees.**

No. 13198.

Court of Civil Appeals of Texas.

Houston.

April 14, 1960.

Rehearing Denied May 5, 1960.

T. G. Schirmeyer, L. G. Kratochvil, Houston, for appellant.

Royston, Rayzor & Cook, George W. Renaudin, Houston, for appellee, Norddeutscher Lloyd.

Fulbright, Crooker, Freeman, Bates & Jaworski, Quentin Bates, Houston, for appellee, Houston Belt & Terminal Railway Co.

WERLEIN, Justice.

Appellant, Rhinetubes, Inc., brought this suit against Norddeutscher Lloyd, hereinafter called ship-carrier, and Houston Belt & Terminal Railway Co., hereinafter called railroad, to recover damages to a shipment of steel casing transported by appellee, ship-carrier, on the S. S. Adolf Vinnen from Antwerp, Belgium, to Houston, Texas and by appellee railroad, from shipside to Long Drive Team Track in Houston. Appellee ship-carrier issued a negotiable bill of lading and acknowledged receipt in apparent good order and condition of 177 pieces of 16" steel casing, at Antwerp, for shipment to Houston, Texas, to the order of appellant as consignee. The shipment was discharged as authorized directly into railway gondola cars switched alongside the Adolf Vinnen. The railroad issued a straight railroad bill of lading to appellant acknowledging that it received the

shipment in apparent good order and condition and agreeing to transport it from shipside to Long Drive Team Track. After the railroad cars arrived and were spotted on Long Drive Team Track, appellant inspected the steel casing while it was still in the cars and at that time discovered that 115 joints out of the 177 joints were badly damaged. Thereupon written notice of the damage was given by appellant to both the ship-carrier and the railroad. The parties to the lawsuit stipulated that the damage amounted to $2,050.

The case was tried without a jury. Appellant introduced in evidence its bills of lading and proof of damage to the cargo, and rested. Appellee ship-carrier thereupon moved for judgment as to it, which was granted by the court.

Appellee railroad also moved for judgment, which was denied. The railroad thereupon introduced additional evidence, at the conclusion of which the court entered judgment in its favor.

The sole question presented as between appellant and the ship-carrier on this appeal is whether at the time appellant rested it had made out a prima facie case against ship-carrier.

Appellant, by its first Point, asserts that the trial court rendered judgment in favor of ship-carrier on the ground that appellant had failed to give written notice of cargo damage at the time of discharge of the shipment from the ship into the gondola cars, and that in so doing the court erred.

■ The obligations and liabilities as between appellant and ship-carrier are controlled by the bill of lading and the United States Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. (hereinafter referred to as COGSA), and particularly § 1303(6) thereof which reads:

"(6) Unless notice of loss or damage and the general nature of such loss or damage be given in writing to the carrier or his agent at the port of discharge before or at the time of the removal of the goods into the custody of the person entitled to delivery thereof under the contract of carriage, such removal shall be prima facie evidence of the delivery by the carrier of the goods as described in the bill of lading. If the loss or damage is not apparent, the notice must be given within three days of the delivery."

In this case appellant failed to give written notice of the damage to the shipment in question to ship-carrier or its agent at the port of discharge before or at the time of the removal of the goods into the custody of the railroad, and indeed did not give the required written notice until approximately six days after the shipment had been delivered by ship-carrier. Appellant did establish through the bill of lading that the shipment was in good condition when it was delivered to ship-carrier at Antwerp. It failed, however, to show that the shipment was in a damaged condition when it was delivered by ship-carrier. The railroad bill of lading indicated that it was in apparent good order at such time. At the time appellant rested, no evidence or proof had been offered by appellant as to the condition of the goods at the time they left the custody of the ship-carrier. Therefore, under COGSA the ship-carrier had established a prima facie defense by appellant's failure to give notice as required.

Appellant contends, however, that it was not given a reasonable opportunity to inspect the goods, and that the first time reasonable facilities were provided appellant to inspect such shipment was on the railroad's team track some days later. Sec. 1303(6) of COGSA also provides:

"In the case of any actual or apprehended loss or damage the carrier and the receiver shall give all reasonable facilities to each other for inspecting and tallying the goods."

Appellant contends that the ship-carrier had the burden of proving that it gave

reasonable facilities to appellant, and having failed to do so the court erred in sustaining ship-carrier's motion to enter judgment in its favor.

The evidence shows that the S. S. Adolf Vinnen arrived in Houston in the latter part of December, 1954, and the cargo in question was discharged at the dock directly into railway cars on or about December 22, 1954. Appellant was given notice of the arrival of the ship and knew that the cargo was being delivered by ship-carrier into gondolas at shipside. Appellant's district manager, Robert L. Horlander, testified that the first written notice of damage sent by appellant to ship-carrier's Houston agents, Biehl & Company, was his letter dated December 28, 1954.

■■ We find no provision in COGSA which requires an ocean carrier to prove in defense of a claim for cargo damage that it provided reasonable facilities to the receiver of the goods for inspecting and tallying the shipment. There is no pleading and no evidence that appellant could not have had its agent at shipside when the cargo was being unloaded, and at such time made an inspection of the shipment of steel casing when or immediately after it was placed in the gondola cars, and then have given notice as required by COGSA. Upon its failure to do so, the removal of the shipment constituted prima facie evidence of the delivery by ship-carrier of the goods as described in the bill of lading.

We think that this case, insofar as the ship-carrier is concerned, is governed by Miami Structural Iron Corp. v. Cie Nacionale, etc., 5 Cir., 1955, 224 F.2d 566. In that case the libellant, appellant, entirely failed to prove that the goods were discharged from the vessel in damaged condition, and failed to give notice of the damage until six days after discharge of the cargo. The court, in dismissing the libel because of libellant's failure to make out a prima facie case, held that the failure to give notice at or near the time of delivery raised, in law, a presumption of delivery of the goods

as described in the bill of lading. In the instant case, as in the Miami case, the presumption stood unrebutted at the time appellant rested its case and the trial court entered judgment for appellee ship-carrier.

Appellant has cited a number of cases which are inapplicable to the present suit. Some of such cases were decided prior to 1936 when COGSA was enacted. The case of Newport Rolling Mill Co. v. Mississippi Valley Barge Line Co., D.C., 50 F. Supp. 623 (1943 A.M.C. 793), deals with a "through" bill of lading issued by a barge line to a shipper, under the terms of which the barge line agreed to transport certain goods to an ocean port and there transfer the cargo to a steamship for ocean carriage to another port. The point on which the court had to pass was the effect of the failure of the shipper to file a formal claim with the carrier and whether such failure barred suit. It had nothing to do with the evidentiary effect of plaintiff's failure to give notice of damage at the time the cargo left the custody of the carrier under the provisions of COGSA.

The case of Balfour, Guthrie & Co. v. American-West African Line, 2 Cir., 1943, 136 F.2d 320 (the Zarembo), held in effect that the failure to file a written claim of loss did not prejudice the right of the plaintiff to file suit within a year under the provisions of COGSA. Sec. 1303(8) of COGSA provides that any clause in a contract of carriage lessening the liability of the carrier otherwise than as provided in COGSA shall be null and void.

In Teneria El Popo v. Home Insurance Co. et al., 207 Misc. 84, 136 N.Y.S.2d 574, the plaintiff introduced evidence to overcome the presumption of good delivery resulting from failure to give notice of damage, showing that the damage in all probability must have occurred while the goods were in the custody of the defendant steamship company during the voyage from Brazil to Hoboken.

We think it would serve no useful purpose to discuss the other cases cited by ap-

pellant as they are factually distinguishable from the present case.

Appellant complains in its second Point that the trial court erred in entering judgment for appellee railroad, since it had issued a bill of lading acknowledging receipt of the steel casing in good order, and the same was later found in the railroad's possession in damaged condition.

The railroad issued a straight bill of lading acknowledging receipt in apparent good condition of the cargo in question. It transported the same from shipside to Long Drive Team Track, where the shipment was inspected and the damage to 115 pieces of casing was discovered and reported on December 28, 1954.

■ It is not disputed that appellee railroad is a common carrier, and as such is an insurer of goods against all hazards excepting injuries or losses caused by the act of God, by the public enemy, by an act or omission on the part of the shipper or owner, by some inherent defect, quality or vice of the thing carried or by seizure of the goods under legal process. Article 882 et seq., Vernon's Ann.Texas Civ.St.; 11 Tex.Jur.2d p. 142, Carriers, § 375.

In our opinion appellant made out a prima facie case against the railroad when it introduced in evidence the railroad bill of lading acknowledging receipt of the goods in apparent good order, and proved that the casing was in damaged condition when inspected in the railroad cars at Long Drive Team Track. Indeed, the trial court so held in effect when it refused to enter judgment in favor of the railroad on its motion made when appellant rested.

■ The law is well established that where the cargo consists of goods that are not encased but are visible and could have been inspected when delivered to the carrier, the bill of lading executed by the carrier, stating that such goods are not in bad order or that they are in apparent good order or good order, creates a presumption or prima facie case of good condition when received. Such presumption, however, is rebuttable by the carrier. International & G. N. Ry. Co. v. Blanton, Nunnally & Co., 63 Tex. 109; Amerlux Steel Corporation v. Johnson Line, 9 Cir., 1929, 33 F.2d 70; Morris v. Davis, Tex.Civ. App., 3 S.W.2d 109, affirmed Tex.Com. App., 13 S.W.2d 63; Matthews-Carr v. Brown Exp., Tex.Civ.App., 217 S.W.2d 75, no writ; Minneapolis Fire & Marine Ins. Co. v. Baltimore & O. R. Co., 1952, 237 Minn. 111, 53 N.W.2d 828, 33 A.L.R.2d 860, and annotations; 13 C.J.S. Carriers § 254d, p. 538; 9 Tex.Jur.2d, p. 408, Bills of Lading, § 50; 9 Amer.Jur., p. 679, Carriers, § 422; Lawson, Contracts of Carriers, §§ 112 and 180.

In the instant case, after appellant made out its prima facie case by introducing the railroad bill of lading, the railroad in an effort to rebut the presumption that the casing was in apparent good order when delivered to it, introduced evidence consisting of the testimony of Captain R. L. Wynn, a ship and cargo surveyor, who testified in effect that he inspected the casing at the Atlas truck yard in Houston on December 28, 1954, and that 115 pieces were bent on the ends, and that from his long experience and training in making inspections, he was of the opinion that the damage probably occurred "at some point prior to being landed by the vessel in Houston."

To questions asked by the court, Captain Wynn testified that his conclusion was based upon experience in inspecting cargo handled and the manner in which it was handled. He also testified that on numerous occasions over a long period of time he had inspected pipe handled out of ships into cars and out of cars into storage yards, and that the character of damage in question most likely occurred while being loaded into the ship or transported by the ship, and that it was not the type of damage he would expect to find once it is in the railroad cars or loaded or unloaded from the cars; that it could have been damaged prior to being

loaded in the ship or while in the ship or while being unloaded from the ship, but there was nothing in his opinion that could cause that character of damage in railroad cars or while it was being loaded or unloaded or handled by railroad cars.

The trial court in its findings of fact found that the cargo arrived at Houston on or about December 22, 1954, and was discharged from the tackle of the S. S. Adolf Vinnen directly into rail cars placed alongside said vessel; that when appellant rested its case, there was no proof in the record showing what condition the pipe was in before it was loaded into the rail cars; that after the court had rendered judgment in favor of ship-carrier, the railroad introduced evidence by an expert witness to the effect that the damage to the casings was caused prior to the time that such casings were put into the rail cars.

The court concluded that at the time appellant rested, the prima facie case for delivery of said cargo in good order and condition from the ship stood unrebutted, and accordingly ship-carrier was entitled to judgment. The court further concluded that the evidence presented by the railroad after the granting of judgment for ship-carrier, established that the damage to the steel casing was caused prior to the time that the casing was placed in the railroad cars, and that such evidence rebutted and overcame the prima facie proof that the railroad had received the casing in apparent good order, as recited in the bill of lading.

■ The credibility of the witness, Captain Wynn, and the weight to be given his testimony, was for the court as the trier of the facts. His qualifications as an expert were admitted by appellant. Whether or not a person offered as an expert possesses the required qualifications is a question for determination by the trial judge, who has a wide discretion not subject to review in the absence of clear abuse. McCormick and Ray, Texas Law of Evidence, Vol. 2, p. 235, and authorities cited.

■ Having found from the evidence that the damage to the casing occurred prior to the time it was placed in the railroad cars, the court was warranted in concluding that the railroad had rebutted and overcome the prima facie case made by plaintiff by introducing the railroad bill of lading.

In complaining that the court erred in failing to consider reasonable inferences favorable to it in ruling in favor of the ship-carrier, appellant contends that since the evidence is undisputed that appellee ship-carrier received the shipment in apparent good condition at Antwerp and the same was later found to be damaged in the stipulated amount of $2,050, there is an inference not only that the damage occurred after the time the shipment was received aboard the ship and before it was delivered to appellant by the railroad, but also that either or both carriers caused the damage.

■ It is true, as asserted by appellant, that in the trial of a case before the court the granting of a motion for judgment urged at the conclusion of the plaintiff's evidence is the legal equivalent of granting a motion for an instructed verdict where the trial is before a jury. Lorino v. Crawford Packing Co., Tex.Civ.App., 169 S.W.2d 235, 240, affirmed 142 Tex. 51, 175 S.W.2d 410. Under such test the court must presume to be true the evidence of the opposite party, who is entitled to the most favorable construction that such evidence will properly bear and to the benefit of all reasonable inferences arising therefrom. Evans v. Houston Printing Corporation, Tex.Civ.App., 217 S.W.2d 85, ref., n. r. e.; Coca-Cola Bottling Co. of Fort Worth v. Burgess, Tex.Civ.App., 195 S.W.2d 379, ref., n. r. e.

In the present case, however, there are two independent carriers, not operating under a "through" bill of lading, but under two separate bills of lading. At the time appellant rested the ship-carrier had estab-

lished a prima facie defense under COGSA, thereby rebutting any inference that it was responsible. At such time the only inference remaining placed the responsibilty on the railroad. Such inference or presumption was effectively rebutted by the railroad's evidence.

Our review is necessarily limited to a consideration of the record before us. We do not possess the broad powers of the trial court. The judgment must be affirmed.

Affirmed.