No. 48,468

Arnold J. Lipman, Richard Corey and Lloyd Sigler, *Appellants,* v. Eugene E. Petersen, Petersen Tool Company, Inc., Petersen Tool Co., and L & L Van Lines, Inc., *Appellees.*

(575 P.2d 19)

Opinion filed February 25, 1978.

*John P. Woolf,* of Martin, Pringle, Schell & Fair, of Wichita, argued the cause and was on the brief for the appellants.

No appearance by appellees.

The opinion of the court was delivered by

McFarland, J.: This is a civil action brought to recover damages for conversion and breach of a written contract by an unauthorized release and/or wrongful delivery of plaintiffs' (appellants) wrenches which were stored in the warehouse of defendant (appellee) L & L Van Lines.

In December, 1972, plaintiffs purchased 5,000 wrenches from defendants Eugene Petersen and the Petersen Tool Company. The plaintiffs, at the same time, entered into an agreement to warehouse the wrenches with defendant L & L Van Lines (hereafter referred to as L & L). A non-negotiable warehouse receipt was issued for the goods. The receipt limited liability to 30¢ per pound. The employees of L & L did not discuss this provision with the plaintiffs. The receipt also stated that a written order signed by the plaintiffs would be required before any release would be made and that the receipt itself would have to be surrendered when the wrenches were withdrawn. The following month L & L refused to release wrenches because no written order was received. Two written orders were received that month and 384 wrenches were released. The plaintiffs never authorized the release of any more wrenches. Accordingly, 4,616 wrenches remained in the warehouse, with a value of $37,360.

In May, 1973, fire destroyed the warehouse and some of the wrenches were damaged. Employees of L & L loaded all wrenches into one of its trucks for safekeeping. Petersen (the former owner) tried to obtain the wrenches but was refused. Petersen went to see the manager of L & L who was in the hospital for injuries received in the fire. The manager released all wrenches to Petersen without written authorization from plaintiffs. L & L gave no notice to plaintiffs of this action. Later, L & L received a receipt from Petersen. Plaintiffs subsequently learned of the fire and unsuccessfully attempted to recover their wrenches from Petersen. This action resulted. The plaintiffs claim damages in the amount of $34,085, the value of the 4,126 undamaged wrenches.

The plaintiffs sought recovery on alternate theories of breach of contract and conversion. The actual damages sought were the same on both theories. Prior to the trial the administrative judge entered an order requiring the plaintiffs to elect on which theory they desired to proceed. At the bench trial, the trial court upheld the previous order over plaintiffs' objection. Plaintiffs elected to proceed on their conversion theory. Judgment was entered in favor of plaintiffs for $1,237.80 (4,126 wrenches at 30¢ per pound). L & L was given judgment in a like amount on its cross-claim against Petersen. The plaintiffs appeal. Defendants Petersen do not appeal the judgment against them on the cross-petition.

The plaintiffs raise a number of points on appeal. We will first consider the issue as to whether or not L & L's liability was limited by the warehouse receipt as it is dispositive of the case. K.S.A. 84-7-204 provides in part:

"(1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise [of] such care.

"(2) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable: *Provided, however,* That such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates

may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use."

The warehouse receipt in question contained the following provision:

"(e)   Unless a greater valuation is stated herein, the depositor or owner declares that the value in case of loss or damage arising out of storage, transportation, packing, unpacking, fumigation, cleaning or handling of the goods and the liability of the company for any cause for which it may be liable for each or any piece or package and the contents thereof does not exceed and is limited to 30¢ per lb. per article or for the entire contents of the entire storage lot does not exceed and is limited to $2,000, upon which declared or agreed value the rates are based, the depositor or owner having been given the opportunity to declare a higher valuation without limitation in case of loss or damage from any cause which would make the company liable and to pay the higher rate based thereon."

The trial court specifically found that the employees of L & L did not discuss the provision of the warehouse receipt with the plaintiffs. The trial court, after making extensive findings of fact, concluded L & L had converted the wrenches but that its liability was limited to 30¢ per pound.

K.S.A. 84-7-204(2) authorizes a warehouseman to limit his liability for *loss* or *damage* to goods but prohibits such limitation of liability for *conversion to his own use.* The issue then becomes whether or not "conversion" and "conversion to his own use" are synonymous terms. Prior to the enactment of the Uniform Commercial Code in Kansas, K.S.A. 82-110 (repealed 1966) provided:

"Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion   . . . ."

8 Am. Jur. 2d, Bailments, § 109, pp. 1007-1008, states:

"If a bailee actually converts property he is answerable therefor, no matter how good his intentions or how careful he has been. If the wrongful act is intentionally done, it is immaterial that the bailee may have mistakenly believed that he was acting within his legal rights. For example, wherever a person, entrusted with the goods of another, puts them into the hands of a third person without orders, it is apparently now the settled rule that such a delivery to an unauthorized person is as much a conversion as a sale of the property or an appropriation of it to the bailee's own use would be, and that in such cases neither a sincere and apparently well-founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defense even to a gratuitous bailee. That there is an absolute liability for conversion in such cases, without regard to the question of due care or degree of negligence, is now regarded as an established legal principle, applicable to bailments of every description."

This is an issue of first impression. A limitation clause was held inapplicable for an unauthorized sale of goods in *Page v. Allison,* 173 Okla. 205, 47 P.2d 134 (1935), wherein the Oklahoma Supreme Court held:

"The situation of the parties and the attendant circumstances should be considered in the solution of this matter. The goods are entrusted to the care and custody of the warehouseman; he may leisurely and privately examine them to ascertain their value; if he decides to convert them, that is a matter of his own volition, over which the owner would have no control, as it doubtless would be an event which the owner would not even suspect. Such a provision in the contract would be a temptation to the warehouseman to convert any of the goods which were undervalued and thus an inducement to violate his duty to safely keep the goods; in such circumstances, he could profit by his own wrong—the violation of his duty. It is contrary to the policy of the law that any one shall ever so profit. . . ." (p. 207.)

In the case at hand the warehouseman did not personally profit from his wrong. The risk to the property from fire, water, and negligence can be considered to be foreseeable and ordinary risks of bailment. Misdelivery to a third party is not in the same class of risks as it involves an intentional parting with possession, in violation of the terms of the receipt. We hold that "conversion" and "conversion to his own use" are synonymous terms and, accordingly, the limitation of liability clause is inapplicable. The trial court erred in entering judgment based on the weight of the goods, rather than actual value. The trial court did not determine the actual value of the undamaged wrenches.

In view of this holding, the other points raised on appeal need not be considered.

The judgment of the district court is reversed and the case is remanded with directions to the district court to determine the value of the goods and enter judgment in favor of plaintiffs in accordance with this opinion.