ILLINOIS EDUCATION ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.*
ILLINOIS FEDERATION OF TEACHERS *et al.*, Defendants-Appellees.

Fourth District   No. 17539

Opinion filed July 7, 1982.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellants.

Barbara J. Hillman, of Cornfield & Feldman, of Chicago, for appellees.

JUSTICE MILLS delivered the opinion of the court:
We deal here with the theory of *conversion*.
Specifically, did defendant members of the Spring Valley Elemen-

tary Teachers Association convert dues belonging to the Illinois Education Association?

No.

The denial of plaintiffs' request for injunction and dismissal of their complaint for money damages were proper and we affirm.

Sometime in the late 1960's, a group of teachers at Spring Valley Elementary School District No. 99 formed the Spring Valley Elementary Teachers Association (SVETA) for the purpose of collectively bargaining with the district's school board. In April 1972, SVETA became affiliated with the Illinois Education Association (IEA) and was issued a charter as one of the IEA's local education associations.

In May 1977, the members of the SVETA voted to disaffiliate from the IEA and to affiliate with the Illinois Federation of Teachers (IFT). Five of the Spring Valley teachers apparently decided not to join the IFT, retained affiliation with the IEA, and operated a local chapter chartered with the IEA. This association was also called the Spring Valley Elementary Teachers Association. When the trial in this case took place, this IEA local was still in existence, but had only one member.

At the time of disaffiliation, the treasury of the SVETA consisted primarily of dues paid to it by its members either through cash payments or by authorized deductions from the members' paychecks. Prior to disaffiliation, SVETA made payments from its treasury of $1,800 and $858.25 to the IEA for the IEA dues of SVETA members. An additional payment of $190.25 was later submitted to the IEA by SVETA for the balance of the membership dues owed by those five members who retained affiliation with the IEA after the disaffiliation vote. This left a balance of $1,378.50 owed by Spring Valley teachers for IEA dues for the remainder of the 1976-77 membership year.

An IEA representative informed SVETA that the IEA "fully expected them to live up to their obligations of their membership dues for the remainder of the year," and asked that the SVETA immediately transmit the funds.

In June 1977, the officers of the IFT affiliate met and decided to refuse further payment of dues to the IEA. As a result of the meeting, checks were issued to Daniel Marenda in the amount of $500 for "expenses"; to David Hepner in the amount of $400; to Mick Finn in the amount of $500 for "negotiating expenses"; and to Lynn Nimee in the amount of $434.70 for "P.R. expenses." The checks were all signed by Beverly Kimble, the treasurer of SVETA. Her authorization came from the executive committee of the association. At the time the checks were issued, all of the parties involved knew that no expenses had actually been incurred. Nor were the funds thereafter expended for the purposes for which they were disbursed. Rather, the persons to whom the checks had

been issued immediately cashed them and placed the money in a safety deposit box rented by Daniel Marenda and David Hepner. The funds were subsequently returned intact to the treasury of the IFT affiliate.

IEA and its local affiliates filed a complaint in the circuit court alleging that Daniel Marenda, David Hepner, Michael Finn, Noralyn Nimee, and Beverly Kimble had illegally converted the funds of the IEA. Damages sought were $1,378.50, the alleged balance of dues owing for the 1976-77 membership year. The complaint also sought to enjoin the IFT from using the name Spring Valley Elementary Teachers Association.

Trial was held and at the close of plaintiffs' case, defendants made an oral motion for a directed verdict on both counts. The trial court did not adopt this unfortunate and erroneous terminology, but did grant the relief requested. The trial judge denied plaintiffs' request for an injunction and dismissed the remainder of their complaint. Plaintiffs originally contended that both rulings were incorrect. However, they no longer pursue their appeal as to injunctive relief, and that portion of it is dismissed.

As to the remainder of plaintiffs' appeal, the decision below was not governed by the standards set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504—as both parties seem to assume. Rather, the trial court's decision is to be reviewed to determine whether it comports with the requirements of section 64(3) of the Civil Practice Act, which provides:

> "In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered. If the ruling on the motion is adverse to the defendant he may proceed to adduce evidence in support of his defense, in which event the motion is waived." Ill. Rev. Stat. 1979, ch. 110, par. 64(3).

This standard is much different than that applicable to directed verdict situations where the trial judge is to refrain from weighing the evidence. The supreme court has recently held that in ruling on a section 64(3) motion, the trial judge must engage in a two-step analysis. First, the trial judge must decide if the plaintiff has presented *some* evidence on each of the elements of his cause of action. If plaintiff has not, the cause must be dismissed. Otherwise, the judge must go on to determine if *any* of the evidence necessary to plaintiff's *prima facie* case has been negated. If so, dismissal is required. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) We hold that the trial judge could properly have determined—after engaging in this weighing process—that plaintiffs did not present a *prima facie* case and properly dismissed plaintiffs' complaint.

■■ In order to make out a case for conversion, the plaintiff must establish each of the following four elements: (1) unauthorized and wrongful assumption of control, dominion, or ownership over the personal property of another; (2) the plaintiff's right to the property; (3) his absolute and unconditional right to immediate possession of the property; and (4) a demand for possession. *Kunde v. Biddle* (1976), 41 Ill. App. 3d 223, 353 N.E.2d 410.

■■ There can be no doubt that, if the funds in the SVETA treasury actually belonged to the IEA, the distribution of the funds to defendants Marenda, Hepner, Finn, and Nimee for expenses they did not actually incur was a wrongful assumption of control over the personal property of another. That the funds were eventually returned to the treasury of SVETA will not insulate these defendants from liability. An action for conversion will lie even though the defendant has returned the property. (*Barrelett v. Bellgard* (1874), 71 Ill. 280.) However, in such a situation only nominal damages are recoverable.

Nor can it be argued that the plaintiffs did not make a demand for the property involved here. Testimony at trial indicated that a representative of the IEA informed SVETA that the IEA expected them to live up to their obligation for membership dues and requested immediate transmission of those dues to the IEA. Even though this oral demand was not the usual procedure, it is clear that SVETA treated it as a demand. *Hoffman v. Allstate Insurance Co.* (1980), 85 Ill. App. 3d 631, 407 N.E.2d 156, relied upon by the defendants for the proposition that no demand was made, is inapposite. In *Hoffman*, the evidence indicated that the plaintiff simply inquired as to the whereabouts of his property; he never demanded possession of it. The contrary is true here.

There are two theories under which plaintiffs' ownership and immediate possessory right to the money herein involved could be established. The first is a contract between IEA and its members in SVETA; the second is an agency contract between IEA and SVETA itself. We find neither persuasive.

This court has held that the constitution and bylaws of a labor union are contracts binding upon the members of the union. (*Payne v. Collier* (1976), 38 Ill. App. 3d 201, 347 N.E.2d 863.) Thus, the IEA could prevail if its constitution/bylaws provided for a forfeiture of the property of an IEA local upon disaffiliation of the local. (*Gross Loge des Deutschen Orden der Harugari des Staates Illinois v. Brausch* (1912), 256 Ill. 185, 199 N.E. 908; *Freundschaft Lodge No. 72 D. O. H. v. Alchenburger* (1908), 235 Ill. 438, 85 N.E. 653.) However, no evidence was introduced at trial as to the existence of any such provision.

*Martinek v. Zarovy* (1943), 318 Ill. App. 605, 48 N.E.2d 760, and *Bachman v. Hofman* (1902), 104 Ill. App. 159, are of no aid to the plain-

tiffs because both cases merely deal with the rights of minority members of an association when the majority votes to dissolve. There was no dissolution here. SVETA existed before affiliating with the IEA, and it continued to exist afterwards. Since this is not a suit by the five members of the SVETA who voted to retain affiliation with the IEA, *Martinek* and *Bachman* are not persuasive.

■■ The second—agency theory—also fails because, as the defendants correctly point out, SVETA is a voluntary labor organization and as such is an agent of its members, not the agent of a parent body with which it is affiliated. (*Louisville Ry. Co. v. Louisville Area Transport Workers Union* (1950), 312 Ky. 657, 228 S.W.2d 652.) Thus, the mere fact that the IEA issued a charter to SVETA does not make SVETA its agent for collecting dues.

Although not directly on point, *Technical Engineers Local 144 v. La Jeunesse* (1976), 63 Ill. 2d 263, 347 N.E.2d 712 (holding that an unincorporated association cannot sue or be sued in its own name) at least implies that an unincorporated association has no existence beyond its members and is thus only their agent and not that of the national or international labor organization. We so hold.

■■ Plaintiffs did present evidence that SVETA transfered dues money both before and after disaffiliation. This is *some* evidence of a contract between the IEA and the SVETA. However, evidence also established that SVETA was a voluntary labor organization in existence both before affiliation with the IEA and after disaffiliation. This evidence negates the inference that SVETA was acting as an agent for IEA when it transmitted dues. Without more, the evidence establishes only that the SVETA was acting as the agent of its members.

The IEA failed to present a *prima facie* case and dismissal was proper.

Affirmed.

GREEN, P. J., and TRAPP, J., concur.