**REFRIGERATION SALES CO., INC., Plaintiff,**

v.

**MITCHELL–JACKSON, INC., et al., Defendants.**

No. 81 C 5581.

United States District Court, N.D. Illinois, E.D.

Nov. 18, 1983.

---

Robert J. Slobig, Jerome H. Torshen, Ltd., Chicago, Ill., for plaintiff.

Peter A. Quilici, Conklin & Adler, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Refrigeration Sales Co. ("Refrigeration") has brought this two-count diversity action against Mitchell-Jackson, Inc. ("Mitchell-Jackson") and its President Alfred L. Jackson ("Jackson"), seeking damages for loss of and damage to goods and equipment stored in Mitchell-Jackson's warehouse. Count I alleges Mitchell-Jackson is liable for conversion of the goods and equipment, while Count II alleges Jackson is liable for conversion both in his individual capacity and as alter ego of Mitchell-Jackson. Defendants now move for summary judgment under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, defendants' motion is granted.

### Facts [1]

From before 1960 to 1979 Refrigeration, headquartered in New York, stored goods and equipment (for convenience in reference and because the usage conforms to the UCC and the documents in this case, this opinion will simply use the collective term "goods") at Mitchell-Jackson's warehouse in Chicago (so the goods were more readily available for sale in this area). Each time Mitchell-Jackson received goods from Refrigeration, it issued a non-negotiable warehouse receipt ("Receipt") on the reverse of which were listed the "Terms and Conditions" of the bailment. Receipt § 10(b), its only relevant provision, reads:

> Claims by the depositor must be presented in writing within a reasonable time, and in no event longer than 60 days after delivery of the goods. No action may be maintained by the depositor against the warehouseman for loss or damage to goods covered hereunder unless commenced within 12 months next after date of delivery by the warehouseman.

Dissatisfied with the service it was receiving from Mitchell-Jackson, Refrigeration sent a July 3, 1979 certified letter to Mitchell-Jackson ordering it to ship all of Refrigeration's goods then in storage to another warehouse. When Mitchell-Jackson complied in October and December 1979,[2] Refrigeration's employee William

---

1. In accordance with Rule 56 principles, these facts are recounted in a light most favorable to Refrigeration, the non-moving party, and with all reasonable inferences drawn in Refrigeration's favor.

2. Defendants have presented evidence about the reasons for the delay between the receipt of the

Hughes ("Hughes") discovered Mitchell-Jackson claimed to have been storing less of Refrigeration's goods than it should have been holding according to Refrigeration's records. Hughes also examined a portion of the goods actually delivered by Mitchell-Jackson to the other warehouse, and he found them unsaleable because of their rusty and dirty condition.

Jackson (Mitchell-Jackson's president, chief executive officer and manager) has testified he discovered a discrepancy between Refrigeration's books and Mitchell-Jackson's about September 1977 (Jackson Dep. 110–11). Jackson neither ordered a physical inventory nor adjusted Refrigeration's bills to conform to Refrigeration's records (*id.* 114). Neither side has offered an explanation of the discrepancy.[3]

Refrigeration failed to comply with Receipt § 10(b)'s timetable in both respects:

1. It did not present a written claim for the value of the lost and damaged goods to Mitchell-Jackson within 60 days of the final delivery by Mitchell-Jackson.

2. It did not file a lawsuit against Mitchell-Jackson within a year of the final delivery date.

Instead it filed this lawsuit in October 1981, nearly *two* years after the final delivery date.

### Issues and the Applicable Law

Defendants' motion for summary judgment is based on two independent arguments, either of which would cause defendants to prevail:

1. Refrigeration's two-fold noncompliance with Receipt § 10(b)'s timetable is fatal to its claim.

2. In any event Refrigeration's evidence is incapable of establishing vital elements of the tort of conversion for each type of damages claimed.

Both sides agree this Court must look to Illinois law for its rules of decision, though they reach that destination by differing routes. Defendants contend an Illinois court would choose Illinois law because Illinois was the place of performance of the contract (citing *Southwest Forest Industries v. Sharfstein,* 482 F.2d 915, 919 (7th Cir.1972), a case of doubtful current significance given the apparent movement of Illinois law toward the "most significant relationship" test in contract as well as tort cases). Refrigeration, rejecting the contract characterization in favor of its tort theory of recovery, retorts an Illinois court would choose Illinois law because Illinois has the most significant relationship with the occurrence and parties (citing *Ingersoll v. Klein,* 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970)).

### Receipt § 10(b)

Defendants naturally rely on the literal language of Receipt § 10(b). Because Refrigeration plainly has not met either timetable if it applies, Refrigeration can defeat defendants' contention only by showing the limitations provisions are either inapplicable or unenforceable.

■ Enforceability poses the easier issue, for the Illinois statute governing limitations provisions in bailment contracts, Ill. Rev.Stat. ch. 26, § 7–204(3) (identical to UCC § 7–204(3)),[4] says such provisions are enforceable if reasonable. Defendants point to cases upholding as reasonable time periods shorter than those in Receipt § 10(b). See, e.g., *Strom International, Ltd. v. Spar Warehouse & Distributors, Inc.,* 69 Ill.App.3d 696, 26 Ill.Dec. 484, 388 N.E.2d 108 (1st Dist.1979) (upholding nine-

---

certified letter and the delivery of the goods. Those reasons however are immaterial to the disposition of defendants' motion.

**3.** This Court has once before dealt with the mysterious disappearance of goods from a warehouse in *Inland Metals Refining Co. v. Ceres Marine Terminals, Inc.,* 557 F.Supp. 344 (N.D.Ill.1983) (applying Indiana law). Because

Illinois law contains no counterpart of the Indiana case found controlling in *Inland Metals,* resolution of the issue here requires more extensive treatment.

**4.** Future citations to the Uniform Commercial Code and to its Illinois enactment in Ill.Rev. Stat. ch. 26 will simply read "Section—."

month limitation of actions). As in *Strom International*, 69 Ill.App.3d at 702, 26 Ill. Dec. at 488, 388 N.E.2d at 112 there is nothing in the nature of Refrigeration's stored goods that requires a longer limitations period.

Understandably Refrigeration does not contest the reasonableness of Receipt § 10(b). Instead it denies the statute's applicability here for three reasons:

    1. If given the opportunity, Illinois courts would read into Section 7–204(3) and Receipt § 10(b) an exception for conversion actions.

    2. Jackson is liable in his individual capacity as a tortfeasor and was not a party to the Receipt.

    3. Defendants are estopped to assert the limitations provision.

None of those arguments withstands analysis.

As to its first contention, Refrigeration points out the only courts considering the question have found warehouse receipt limitations provisions do not apply to conversion actions. *William Iselin & Company v. Milton Feinberg, Inc.*, 92 A.D.2d 495, 459 N.Y.S.2d 87 (1983); *Continental Metals Corp. v. Municipal Warehouse Co.*, 112 Misc.2d 923, 447 N.Y.S.2d 849 (Sup.Ct. Spec.Term 1982), *aff'd on the trial court's opinion*, 92 A.D.2d 477, 459 N.Y.S.2d 406 (1983). Those cases are really but a single authority, for both rested on the lower court decision in *Continental Metals* (447 N.Y.S.2d at 851), which asserted the culpable nature of conversion and analogized a converting warehouse to a thief (the warehouse had explained the goods must have been stolen by one of its employees).

That analogy between conversion and theft is not persuasive in light of Refrigeration's theory of liability. As in *Continental Metals*, Refrigeration urges the mere fact the warehoused goods are missing es-

tablishes conversion by the warehouseman.[5] When a plaintiff thus asks that conversion be presumed from the mere unexplained disappearance of the goods, any policy considerations that might preclude the bailee from taking advantage of the contractual limitations provision are absent. After all, a bailee found liable for presumed (or "res ipsa"[6]) conversion is no more morally culpable than one found liable for negligence.

But even Refrigeration's transformation of "res ipsa" conversion (which involves no element of intent) into intentional theft (which of course is directly predicated on intent) is not enough to make it succeed. This is so because Section 7–204(2) (permitting contractual limitations of damages) excepts conversion to the warehouseman's own use while Section 7–204(3) does not (emphasis added):

    (2) Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman shall not be liable; provided, however, that such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. *No such limitation is effective with respect to the warehouseman's liability for conversion to his own use.*

    (3) Reasonable provisions as to the time and manner of presenting claims and in-

---

5. In *Inland Metals*, 557 F.Supp. at 348 this Court found such a theory does not support a conversion cause of action under Indiana law, though it does in New York under *I.C.C. Metals, Inc. v. Municipal Warehouse Co.*, 50 N.Y.2d 657, 431 N.Y.S.2d 372, 409 N.E.2d 849 (1980).

6. This opinion will use the term "res ipsa" conversion because the presumption operates much like the establishment of negligence under the doctrine of res ipsa loquitur—by presuming cause from effect.

stituting actions based on the bailment may be included in the warehouse receipt or tariff.

Plainly the General Assembly (following the UCC draftsmen) specifically considered the subject of conversion actions against warehousemen in enacting the statute. It inserted a specific exception for conversion into Section 7–204(2). Under established principles of statutory construction[7] as well as plain common sense, the legislature's omission of a like exception from Section 7–204(3) must be viewed as intentional.

When the legislative branch has thus dealt with the matter, it does violence to our governmental division of functions— and thus violates established Illinois legal principles—to create a judicial exception as did *Continental Metals.* Judge Silverman, dissenting in that case, explained the policy considerations that justify inserting a conversion exception into Section 7–204(2) while refusing to do so in Section 7–204(3) (459 N.Y.S.2d at 407):

> The statutory difference between the two provisions reflects the difference in policy considerations applicable to the two situations. The warehouseman, who knows that if he converts $100,000 worth of property he will only be liable for $50, would be encouraged to convert. But a warehouseman who would be liable for the full amount will not be encouraged to convert because the bailor would have to sue him within one year and 60 days after presentation of the claim; the bailor after all is perfectly free to, and in the vast majority of cases will actually, sue within that period. The shortened statute of limitation merely serves the purpose of all statutes of limitations—putting disputes to rest and requiring suits to be brought while the evidence is fresh and available.

Refrigeration argues Section 7–204(3) implicitly contains a conversion exception because it is limited in its operation to claims and actions "on the bailment." Conversion, it says, is a tort action and therefore is not "on the bailment." That contention cannot prevail over the discussion just completed. When the General Assembly has demonstrated it knows how to create a specific exception for conversion actions, it strains the principles of statutory construction to indulge a forced reading to imply such an exception elsewhere, where the legislature has not done so. But even apart from that obvious answer Refrigeration's reply must fail:

1. Refrigeration and Mitchell-Jackson stand in a bailor-bailee relationship. This action pertains to the bailed goods and is grounded on that relationship. In ordinary English that suffices to render the action one "on the bailment."

2. Even were that not so, the kind of exception Refrigeration urges would tend to swallow up the rule—to render Section 7–204(3) entirely ineffectual. Refrigeration's "res ipsa" conversion is a concept so broad as to permit any contractual action on a bailment to be pleaded and proved as a so-called conversion action.

This discussion has been prolonged both because of the paucity of direct precedent and because Refrigeration's position is flawed in a number of ways. In sum the argument for giving Receipt § 10(b) other than its normal and literal reading cannot prevail.

■ As for Refrigeration's second response, that Jackson cannot avail himself of Receipt § 10(b), it is clearly bankrupt under Refrigeration's alter ego theory of liability: If Jackson stands in the shoes of Mitchell-Jackson, he stands in both shoes, with the benefits as well as the burdens of the corporation's position. And on the alternative theory of his individual liability for tortious conduct, Illinois law rejects Refrigeration's assertions. Thus *Hyman v. 230 South Franklin Corp.,* 7 Ill.App.2d 15, 128 N.E.2d 629 (1st Dist.1955) (abst. op.

---

**7.** Illinois courts subscribe to the maxim "expressio unius exclusio alterius." *In re Sneed,* 48 Ill.App.3d 364, 368, 6 Ill.Dec. 508, 511, 363 N.E.2d 37, 40 (1st Dist.1977), *aff'd,* 72 Ill.2d 326, 21 Ill.Dec. 194, 381 N.E.2d 272 (1978); 34 I.L.P. *Statutes* § 119 (1958).

only) permitted an agent managing rental property to invoke an exculpatory clause in the governing lease, though literally applicable only to the lessor.[8] Wholly apart from that authority, Refrigeration is simply wrong on the facts. Its proof, even on the most favorable inferences, does not establish Jackson's individual involvement in the conversion. If he has potential tort liability it must be vicarious, and Release § 10(b) stands squarely in the path.

■ Finally as to Release § 10(b), Refrigeration claims defendants are estopped to rely on its provisions because they intentionally deceived Refrigeration by not informing it sooner of the missing inventories. Refrigeration relies on the Illinois law of estoppel as outlined in *Strom International*, 69 Ill.App.3d at 703, 26 Ill.Dec. at 489, 388 N.E.2d at 113 (citations omitted):

> Estoppel applies if: (1) defendant has made some misrepresentation or concealment of a material fact; (2) defendant had knowledge, either actual or implied, that the representations were untrue at the time they were made; (3) plaintiff was unaware of the untruth of the representations both at the time made and the time they were acted upon; (4) defendant either intended or expected his representations or conduct to be acted upon; (5) plaintiff did in fact rely upon or act upon the representations or conduct; and (6) plaintiff has acted on the basis of the representations or conduct such that he would be prejudiced if defendant is not estopped.... Waiver applies if defendant's conduct indicates that it is intentionally relinquishing a known right.... If there is no dispute in the material facts of a case and only one inference is

possible, the question of whether the facts prove estoppel or waiver becomes a question of law.

To state that argument is to demonstrate its poverty. Defendants' alleged deception ceased to operate in 1979 when Refrigeration inspected its goods, and far more than the requisite one-year period passed from Refrigeration's discovery until it commenced this action. Thus the essential element of detrimental reliance is absent: Refrigeration knew of the untruth of defendants' representations for more than one year preceding its filing of this action (the very period during which Refrigeration claims it failed to act, to its detriment, in reliance on the misrepresentations). As stated in the estoppel principles approved in *Sabath v. Morris Handler Co.*, 102 Ill. App.2d 218, 226, 243 N.E.2d 723, 727 (1st Dist.1968):

> [I]f the inducement for delay has ceased to operate sufficiently before the expiration of the limitation period so as to afford the plaintiffs ample time within such period to commence their action, then estoppel is not available.

All three of Refrigeration's arguments have fallen. Receipt § 10(b) must be enforced in accordance with its literal terms.

### *Elements of Conversion*

■ As already stated, Refrigeration's position is that conversion can be presumed from the disappearance of (or even damage to) its bailed goods. That stance was compelled by Refrigeration's lack of evidence (and the lack of any basis for inferring) defendants had intentionally appropriated Refrigeration's goods to their own gain.[9] Because Receipt § 10(b) has been

---

**8.** Def.R.Mem. 7 suggests:
> To hold otherwise would create the anomalous situation wherein the non-acting corporate entity could rely on its warehouse receipt limitations but its agents and employees who actually participated in any alleged loss could not. The obvious purpose of the provision is to shorten the time for instituting actions, but excluding a warehouseman's employees from its benefits would circumvent its purpose by leaving them susceptible to suit for the entire

period provided by the Statute of Limitations. Since a claim could conceivably involve numerous employees and agents, the employer would have to intercede and probably defend and indemnify his employees in order to conduct his business.

**9.** Refrigeration's offer (Mem. 15) to "present ample evidence to prove each of these elements of conversion" wholly misperceives the nature of Rule 56 proceedings. Rule 56(e) specifies if

held enforceable and applicable here, it has been unnecessary to rule definitively on the validity of Refrigeration's theory of liability under Illinois law.

It may however be appropriate to comment briefly on a major point of difference between Refrigeration and defendants: the distinction between "conversion" and "conversion to one's own use." Refrigeration alleged (Amended Complaint ¶ 30) defendants converted the goods "to [their] own use." It concedes it did so to track the language of the conversion exception to Section 7–204(2). Nonetheless it maintains "conversion" is no different from "conversion to one's own use." See *Lipman v. Petersen*, 223 Kan. 483, 575 P.2d 19, 21 (1978) (reading the Kansas enactment of the UCC in light of the prior Kansas statute).

Defendants respond not all conversion is "to one's own use." They say Refrigeration, to establish conversion to defendants' "own use," must show there has been a conversion *and* defendants acquired the goods for their own benefit.

Defendants have the better of that exchange for three reasons:

1. *Lipman*, relied upon by Refrigeration, does not defend or discuss its conclusion that "conversion" and "conversion to one's own use" are equivalent. That case provides no persuasive support for the notion Illinois courts would similarly ignore the difference in meaning normally attributable to a difference in language.

2. One source cited by both *Lipman* and defendants, 8 Am.Jur.2d *Bailments* § 121, at 853 (2d ed. 1980) (emphasis added), distinguishes between the two types of conversion in a manner consistent with defendants' position:

> For example, whenever a person entrusted with the goods of another puts them into the hands of a third person without orders, it is apparently the settled rule that such a delivery to an unauthorized person is *as much a conversion as a sale of the property or an appropriation of it to the bailee's own use would be....*

See also *id.* § 118, at 848.

3. As this opinion's earlier discussion of Sections 7–204(2) and 7–204(3) demonstrates, Refrigeration's argued-for universal conversion exception to the latter section would permit plaintiffs to circumvent the statute entirely by alleging conversion rather than breach of the bailment contract. That possibility is obviated by requiring plaintiffs, in order to invoke a conversion exception, to allege not just conversion but conversion to the defendant's "own use."

Both in plain English and for the added reasons just sketched, "conversion to one's own use" contains an additional element "conversion" alone does not. There is no hint Refrigeration could establish that element even were Receipt § 10(b) inapplicable.[10]

---

Refrigeration has not yet shown a basis for its claim it does not merit a future opportunity to do so:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Refrigeration's memorandum exhibits a total unwillingness to assume the burden of proving defendants stole the merchandise. No genuine issue of material fact exists as to any claim defendants acted with malice or actually acquired the allegedly converted goods.

**10.** Under the analysis in this opinion it becomes unnecessary to decide whether mysterious disappearance is enough to establish conversion under Illinois law. But one component of Refrigeration's claim, that relating to damaged rather than missing goods, is untenable in any case. *Illinois Education Ass'n v. Illinois Federation of Teachers*, 107 Ill.App.3d 686, 689, 63 Ill.Dec. 343, 346, 437 N.E.2d 1265, 1267 (4th Dist.1982), describes conversion under Illinois law:

> In order to make out a case for conversion, the plaintiff must establish each of the following four elements: (1) unauthorized and wrongful assumption of control, dominion, or ownership over the personal property of another; (2) the plaintiff's right to the property; (3) his absolute and unconditional right to

*Conclusion*

There is no genuine issue of material fact, and defendants are entitled to a judgment as a matter of law. Their motion for summary judgment is granted, and this action is dismissed.

immediate possession of the property; and (4) a demand for possession.

Defendants' conduct as to the damaged goods simply did not constitute an unauthorized as-

sumption of "control, dominion, or ownership." Restatement (Second) of Torts § 237, comments a & b.