Chris FOTOS, Appellant,

v.

**FIREMEN'S INSURANCE COMPANY OF WASHINGTON, D.C., Appellee.**

No. 86–260.

District of Columbia Court of Appeals.

Argued May 21, 1987.
Decided Nov. 30, 1987.

---

Charles H. Acker, III, Washington, D.C., for appellant.

George H. Eggers, Silver Spring, Md., for appellee.

Before FERREN, BELSON and TERRY, Associate Judges.

BELSON, Associate Judge:

In this appeal, we consider appellant's liability for the theft of a fur coat that had been delivered to him for storage. After a non-jury trial, the court held that, because appellant had stored the coat at a location other than the address listed on the storage receipt, he was liable to appellee, the owner's insurer and subrogee, for the value of the coat. The court also held that appellant was not entitled to the benefit of a $200 limitation of liability printed on the receipt. We agree with appellant that the trial court erred in its finding of liability. Because the record is inconclusive as to whether appellant may be liable under a theory of conversion, however, we remand to allow the trial court to receive additional evidence of the terms of the bailment contract, to make findings as to whether appellant breached that contract, and thus to determine whether appellant is liable for converting the coat.

## I.

In May 1981, Josephine Long purchased a brown shadow mink coat from appellant Chris Fotos, t/a Le Parisien Furriers ("Le Parisien"). Although Long paid a sale price of $5,400 for the coat, the coat was appraised at $7,600. Long insured the coat with appellee Firemen's Insurance Company of Washington, D.C. (Firemen's) for the amount of $7,600.

Two years after her purchase, Long returned the coat to Le Parisien for storage. Fotos issued Long a receipt for storage, at the top of which were printed the words "Le Parisien Furriers," the address of Le Parisien, and its phone number. The receipt also recited an insurance valuation of $200, stating, "This garment is insured against all risks in accordance with the conditions of our Insurance Policy.... Not insured above declared value." Neither party disputes that Long knew of and agreed to this limitation.

Fotos did not keep the coat at Le Parisien; rather, he caused it to be stored with Security Storage ("Security"), a warehouse not affiliated with Le Parisien. The coat was stolen while at that warehouse, apparently by one of Security's employees. As a result, Fotos was unable to return the coat to Long pursuant to their bailment contract. Firemen's paid Long $7,600 under her insurance policy and, as Long's subrogee, sued appellant for that amount.

The trial court found Fotos liable for the value of the coat because the warehouse receipt misstated its place of storage. *See* D.C.Code § 28:7–202(2)(a) (1981). Quoting *Barrett v. Freed*, 35 A.2d 180, 182 (D.C. 1943), the court also held that Fotos' liabili-

ty was not limited to the $200 valuation stated on the storage receipt: "Having agreed to keep the property at a specified place and having breached his contract in that respect, [appellant] cannot fall back upon another condition of his contract relieving him of liability." Because the coat was two years old at the time of theft, the court depreciated the coat's original value by twenty-five per cent and awarded Firemen's $5,700. Fotos appeals from this judgment.[1]

## II.

Fotos challenges the trial court's finding that appellee was damaged by the warehouse receipt's omission of the place of storage under the Uniform Commercial Code (U.C.C.), D.C.Code § 28:7–202 (1981) ("Forms of warehouse receipt"). That section provides in relevant part:

(1) A warehouse receipt need not be in any particular form.

(2) Unless a warehouse receipt embodies within its written or printed terms each of the following, the warehouseman is liable for *damages caused by the omission* to a person injured thereby:

    (a) the location of the warehouse where the goods are stored[.]

*Id.* (emphasis added).[2] The court reasoned that, since the warehouse receipt listed Le Parisien's address rather than that of Security Storage, appellant must be "liable for the damages caused by the failure to specify the place of storage."

■ We agree with appellant that the record cannot support the court's finding

that the loss of the coat was *"caused by the failure to specify* the place of storage." U.C.C. § 7–202, by its plain language, imposes liability only for damages caused by the receipt's failure to specify, in writing, the goods' location, rather than by the location itself. Thus, while it is indisputable that the coat's location at Security's warehouse in some sense "caused" its theft by a Security employee, it cannot be said that the loss was caused by the receipt's failure to specify Security as the place of storage.

*Barrett v. Freed, supra,* cited by the trial court, illustrates a situation in which a failure to specify the place of storage actually caused the bailor's loss. In that case, the bailor had procured insurance for the bailed goods, stating as the place of storage the address listed on the warehouse receipt. 35 A.2d at 181. The insurance policy specifically limited its protection to loss occurring while the goods were stored at the stated location. *Id.* After the bailed goods were destroyed by fire, the insurance company refused to pay because the goods had been moved from the location listed on the receipt and in the insurance policy. *Id.* Thus, in that case, the receipt's very *omission* of the goods' actual location proximately caused the bailor's injury, *viz.,* his inability to collect under his insurance policy.[3] *See also Railey v. Leppert Roos Fur Co.,* 471 S.W.2d 270, 272 (Mo.1971) (remanding to determine whether causal connection existed between receipt's omission of storage location and loss of goods by theft).

---

1. Appellant also appeals the court's failure to deduct from its award the amount of a discount given to Long in her purchase of a replacement coat. Although the trial court's order did not address this issue, we find absolutely no evidence in the record that would support a finding that the discount was intended as partial satisfaction of appellant's liability for the loss of the original coat.

    Nor do we reach the question whether it was appropriate to award the bailor's subrogee $300 more than bailor had paid for the coat two years before. The parties did not raise or brief the issue of the propriety of basing an award of damages on an appraisal inflated substantially above the sale price.

2. The parties do not dispute that appellant is a "warehouseman" as defined by D.C.Code § 28:7–102(1)(h) (1981).

3. *Barrett* did not expressly rely on the Uniform Warehouse Receipts Act ("UWRA"), the predecessor of Article 7 of the U.C.C., which contained an "omission" provision similar to the current U.C.C. § 7–202. *See* D.C.Code § 28–1802 (1961) (current version at D.C.Code § 28:7–202 (1981)). Rather, that opinion discussed the warehouseman's liability in terms of its deviation from the bailment contract. *See Barrett, supra,* 35 A.2d at 181–82. Nevertheless, we find it to be an apt example of the sort of loss against which § 7–202(2)(a) was designed to protect.

Unlike the record in *Barrett,* the record in the instant case contains nothing to suggest that the receipt's misstatement of the storage location contributed to appellee's loss. While it is reasonable to assume that the coat would not have been stolen if it had not been moved from the location listed on the receipt, such an assumption establishes at most that the theft was caused by the goods' change of location, and not the receipt's *omission* of the location. Since appellee's loss was not caused by the omission of the storage location from the warehouse receipt, appellant cannot be held liable under § 7–202.

### III.

In its complaint, appellee alleged that Fotos "did willfully breach the terms of the warehouse receipt by storing the said furs with Security Storage, without notice to [appellee's] subrogors [i.e., Long and her husband], where they were stolen." We read this language to allege a breach of the bailment contract by Fotos, and thus a conversion of the bailed goods. *Cf. Williams v. Buckler,* 264 S.W.2d 279, 280–81 (Ky.1954) (breach of bailment contract by storing the goods in an unauthorized place terminates bailment so that bailor's possession of goods becomes conversion); *Vermont Acceptance Corp. v. Wiltshire,* 103 Vt. 219, 226–28, 153 A. 199, 202 (1931) (breach of bailment contract by unauthorized use of bailed goods terminates bailment and amounts to conversion). Since the trial court did not address this claim, and since the record is factually inconclusive as to its resolution, we remand for further proceedings regarding appellant's alleged conversion.

The U.C.C. provides that a warehouseman is liable for damages due to loss or injury of bailed goods only if he fails to exercise reasonable care, *i.e.,* if he is negligent.[4] D.C.Code § 28:7–204(1) (1981). Nevertheless, the U.C.C. implicitly recognizes that a warehouseman may be held liable for converting bailed goods. *See* D.C.Code § 28:7–204(2) (1981) (limitation on liability ineffective "with respect to warehouseman's *liability for conversion*" (emphasis added)).

■ We have defined conversion to be the "unlawful exercise of ownership, dominion and control over the personalty of another in denial or repudiation of his right to such property." *Blanken v. Harris, Upham & Co.,* 359 A.2d 281, 283 (D.C.1976) (per curiam). A bailee's unauthorized transfer of goods in breach of a bailment contract is an "exercise of ownership, dominion and control" inconsistent with the bailor's rights, and thus constitutes a conversion. *See Lipman v. Petersen,* 223 Kan. 483, 485–86, 575 P.2d 19, 21 (1978) (when person is entrusted with goods of another, putting goods in hands of third person without authorization constitutes conversion); *Procter & Gamble Dist. Co. v. Lawrence Am. Field Warehousing Corp.,* 16 N.Y.2d 344, 362, 266 N.Y.S.2d 785, 799, 213 N.E.2d 873, 883 (1965) (unauthorized transfer of bailed property even for temporary period constitutes conversion).[5]

■ If Fotos breached his contract with Long when he moved the coat to Security's warehouse, he is liable in conversion for its subsequent loss due to theft. Having converted the coat, Fotos could not rely on the warehouse receipt's stated limitation of liability. *See* D.C.Code § 28:7–204(2) (1981).

■ From our review of the record, however, we are unable to determine whether Fotos and Long had agreed that the coat would be stored at Le Parisien. While the warehouse receipt recites Le Parisien's ad-

---

4. Appellee did not allege negligence in its complaint, and does not assert negligence on appeal.

5. See also *Barrett, supra,* which found a warehouseman liable in contract for storing goods in a location other than that agreed to in the bailment contract, 35 A.2d at 181; *cf. Greyvan Lines v. Nesmith,* 50 A.2d 434, 436 (D.C.1946) (upholding contractual liability for carrier's wrongful delivery to warehouse other than one specified). The court in *Barrett* found contractual liability despite an existing provision in the UWRA, similar to that presently contained in the U.C.C., that a warehouseman may be held liable for loss of goods only if he is negligent. *See* D.C.Code § 28–1914 (1961) (current version at D.C.Code § 28:7–204(1) (1981)).

dress, it is not at all clear that the address indicates an intended place of storage, rather than merely the place of the receipt's issuance. Other than the receipt, the record is devoid of any evidence indicating that Fotos represented or that Long believed that the goods would be stored at Le Parisien. We therefore remand the case to the trial court to receive and consider any additional evidence as to whether there was a meeting of minds that the coat would be stored at Le Parisien. If the court should find that the parties agreed to store the coat at Le Parisien, Fotos would be liable for the coat's loss due to its unauthorized transfer to Security. If the court should find that the parties did not specifically agree to store the coat at Le Parisien, Fotos may be liable only if the court, in its discretion, permits appellee to amend its complaint to allege negligence, and further if appellee succeeds in showing negligence by Fotos or by his agent. We note that, in such a case, Fotos' liability would be limited to $200 as stated on the warehouse receipt. *See* D.C.Code § 28:7–204(1), (2) (1981).

*Reversed and remanded for proceedings consistent with this opinion.*