**INDIANA HI–RAIL CORPORATION,
Plaintiff–Appellee,**

**v.**

**DECATUR JUNCTION RAILWAY
CO., Defendant–Appellant.**

No. 94–1030.

United States Court of Appeals,
Seventh Circuit.

Argued June 9, 1994.

Decided Oct. 14, 1994.

Dennis E. Larson (argued), Indiana Hi–Rail Corp., General Counsel, Connersville, IN, for plaintiff-appellee.

Stephen Michael Buck, Husch & Eppenberger, Peoria, IL, Daniel A. LaKemper (argued), Chillicothe, IL, for defendant-appellant.

Before CUMMINGS, ESCHBACH and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Decatur Junction Railway Company ("Decatur Junction") is a common carri-

posed the same sentence absent the erroneous factor.")

er railroad authorized by the Interstate Commerce Commission ("ICC") to operate two railroad lines in east-central Illinois under lease from the owners of those lines. Plaintiff Indiana Hi–Rail Corporation ("Hi–Rail") previously operated both lines, also under lease from the owners. This controversy concerns action taken by Decatur Junction on one of those lines. That line is owned by Central Illinois Shippers, Inc. ("CISI") and runs from Elwin, Illinois to Assumption, Illinois (referred to herein as the "Assumption Line").[1]

### Background

In 1986 Hi–Rail contracted with CISI to provide operations on the Assumption Line until December 31, 1994. In 1993, Decatur Junction contracted with CISI to lease and operate the Assumption Line beginning at the expiration of Hi–Rail's operating agreement. CISI appointed Decatur Junction as its agent, apparently assigning Decatur Junction its rights under its operating agreement with Hi–Rail. See Tr. Dec. 13, 1993 at 22; App. at 15. On October 18, 1993, the ICC authorized Decatur Junction to lease and operate the Assumption Line. Acting pursuant to the CISI's assignment of its contractual rights, Decatur Junction notified Hi–Rail on October 20, 1993 that the agreement allowing it to operate the Assumption Line was being terminated for cause effective that day (App. 15). In early November 1993 Decatur Junction filed a breach of contract action against Hi–Rail in the appropriate Illinois state court.

On December 3, 1993 the ICC entered a show cause order against Hi–Rail concluding that Hi–Rail "appears . . . [to be] operating without proper authority over [the Assumption Line]" and requiring it "to explain what authority it holds from [the ICC] to operate over [that line]" (App. 16).

On Tuesday, December 7, 1993, without Hi–Rail's knowledge or consent, Decatur Junction removed a locomotive belonging to Hi–Rail from the Assumption Line and paid for it to be shipped to the nearest line oper-

ated by Hi–Rail. Decatur Junction claims the locomotive was removed to ensure "safe operations" of the line (Pl. Br. 6). Hi–Rail describes the action as "means of self-help eviction in conjunction with [Decatur Junction's] unilateral cancellation of Hi–Rail's operating contract . . ." (D. Br. 5) (citation to transcript omitted).

On Wednesday, December 8—having learned that its locomotive had been removed from the Assumption Line, but not yet having learned that the engine had been shipped to Hi–Rail property—Hi–Rail contacted the United States District Court for the Central District of Illinois, Springfield Division, to request a hearing on a yet unfiled petition for injunctive relief. Hi–Rail filed its petition for injunctive relief the following day and— after a postponement for which it was not responsible—a hearing was scheduled for Monday, December 13.

In its petition for injunctive relief Hi–Rail claimed that Decatur Junction had converted its locomotive and requested, among other things, that the district court issue an injunction compelling Decatur Junction to return the locomotive and to "refrain from further interference with [its] contractual relationship with [CISI]" (App. 7). In response, Decatur Junction filed a flurry of pleadings, including a motion for the appointment of a new judge, a motion to dismiss, a motion for sanctions, and a response to the petition. Decatur Junction's response to Hi–Rail's petition asserted fourteen affirmative defenses, including a claim that the district court lacked subject matter jurisdiction over the controversy and Hi–Rail had failed to establish that a preliminary injunction was appropriate.

On December 13, the district court heard argument from both parties regarding Hi–Rail's petition. At the hearing it was established that Hi–Rail had regained possession of its locomotive prior to filing its petition for injunctive relief. See Tr. Dec. 13, 1993, at 10, 13; App. at 1, 21. On December 20, 1993, the district court entered an order enjoining

---

1. The other line is owned by Cisco Grain Company and runs from Decatur, Illinois and points east of Cisco, Illinois. Actions between the parties regarding this line are pending in both Illinois state court and before the ICC.

Decatur Junction "from any future conversion of [Hi–Rail's] property" (App. 1), the injunction to "remain in effect until the associated. State action[ ] and Interstate Commerce Commission action[ ] are decided in final form" (App. 2). The district court concluded that issues other than the conversion of the locomotive were properly before the ICC or the state courts of Illinois—a conclusion not contested on appeal by the parties. The district court dismissed Decatur Junction's various motions.

## Analysis

Decatur Junction makes numerous arguments on appeal, essentially taking issue with every legal determination made by the district court. Among other things,[2] Decatur Junction argues that (1) the court lacked subject matter jurisdiction over the controversy and (2) that Hi–Rail failed to allege or establish both that it would suffer irreparable harm if an injunction was not issued and that there was no adequate remedy at law for its injury.

Decatur Junction's first claim of error is dispositive: the district court indisputably lacked subject matter jurisdiction over Hi–Rail's petition for injunctive relief. In its petition, Hi–Rail alleged that the district court had diversity jurisdiction over the con-troversy. 28 U.S.C. § 1332, the relevant statute, provides:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—

(1) citizens of different States.

Hi–Rail. alleged that the parties are citizens of different states and, based on its estimate of the value of the allegedly converted locomotive, that the amount in controversy exceeded $50,000. Decatur Junction takes issue with both assertions. It contends that Hi–Rail—by neglecting to establish the principal place of business of the parties—failed to establish that the parties are diverse. It also contends that the amount in controversy is significantly less than $50,000.

▮ Decatur Junction is correct that the amount in controversy is insufficient to establish diversity jurisdiction.[3] Hi–Rail contends that since its locomotive is worth over $50,000[4] the amount in controversy exceeds $50,000. But as Decatur Junction points out, by the time Hi–Rail commenced this action it was. in possession of the locomotive. The value of the locomotive, therefore, was no longer determinative of the amount in controversy. Rather, the amount in controversy should have been determined by reference to

2. The record does not support Decatur Junction's claims that the district' court abused its discretion by refusing to appoint a new judge and by refusing to sanction Hi–Rail for vexatious conduct.

3. Decatur Junction is also correct that Hi–Rail failed to establish properly that the parties were diverse. 28 U.S.C. § 1332(c) provides that for the purpose of federal diversity jurisdiction, a corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business. *Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 529 (7th Cir.1985). Here Hi–Rail alleged the place of incorporation of both itself and Decatur Junction—Indiana and Iowa, respectively—but did not allege either corporation's principal place of business. Since Hi–Rail failed to plead the principal place of business of the parties, the district court should have either independently established that this jurisdictional requirement was satisfied or dismissed the petition for lack of jurisdiction. *Id.* at 530; *Jason's Foods, Inc. v. Peter Eckrich & Sons, Inc.*, 768 F.2d 189, 190 (7th Cir.1985). Since the

record does not reveal the principal place of business of the parties—and since we therefore cannot establish that diversity of citizenship exists—we would normally remand to the district court with instructions that it make findings with regard to this issue. *Id.* . However, since we hold *infra* that the amount in controversy is insufficient to establish jurisdiction, such a remand is unnecessary.

4. Decatur Junction disputes this valuation, claiming that the locomotive is worth only $40,-000. But as the discussion *infra* makes clear, even if Hi–Rail's estimate is correct the amount in controversy is less than $50,000. This Court, however, is troubled by the district court's failure to determine on the record the actual amount in controversy. Decatur Junction clearly challenged the district court's jurisdiction. And although a district court may generally rely on a plaintiff's allegation regarding the amount in controversy, once such amount is challenged the district court should determine on the record whether jurisdiction exists. *Casio*, 755 F.2d at 530.

the value of the rights Hi–Rail legitimately sought to protect in its petition for injunctive relief. *Burns v. Massachusetts Mutual Life Insurance Co.*, 820 F.2d 246, 248 (8th Cir. 1987).

The district court determined that, of Hi–Rail's various claims for injunctive relief, only its request for an injunction restraining Decatur Junction from converting its property was properly before the court. (Hi–Rail's other claims, the district court concluded, were appropriately before the ICC and the Illinois state courts—a determination the parties do not contest.) And the value of such relief is, as a matter of law, less than $50,000: since the locomotive—the only property that the record reveals was converted—had been returned, Hi–Rail is entitled, under Illinois law, only to nominal damages. *Illinois Education Ass'n v. Illinois Fed'n of Teachers*, 107 Ill.App.3d 686, 689, 63 Ill.Dec. 343, 437 N.E.2d 1265 (4th Dist.1982) (If the defendant has returned the property at issue, only nominal damages are recoverable in conversion action.). Thus it is a legal certainty that Hi–Rail could not recover the jurisdictional amount. Hi–Rail's petition should have been dismissed. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (Where, "from the face of the pleadings it is apparent, to a legal certainty, that the plaintiff cannot recover [the jurisdictional amount] ... the suit [should] be dismissed.").

Since the district court lacked subject matter jurisdiction over the controversy, the preliminary injunction issued is vacated and the case remanded with orders that it be dismissed. By vacating on this basis, we do not mean to suggest that the district court acted appropriately by issuing the injunction at issue here. In order to establish that it is entitled to a preliminary injunction, a party must show that its case has some likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 313–314 (7th Cir. 1994). Since its locomotive had been returned, it is hard to see how Hi–Rail could demonstrate that it was without an adequate remedy at law or that it would suffer irreparable harm if an injunction were not granted. Decatur Junction's allegedly tortious conduct had ceased and there is no indication that Hi–Rail had suffered any injury that could not be compensated adequately through money damages.

Vacated and remanded.