## BANK OF CALIFORNIA, N. A., v. INTERNATIONAL MERCANTILE MARINE CO. (Action No. I).

### No. 13.

Circuit Court of Appeals, Second Circuit.

April 3, 1933.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (John L. Galey, of New York City, of counsel), for appellant.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson, Hiram Thomas, and Edward A. Craighill, Jr., all of New York City, of counsel), for libelant.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Columbia Salmon Company shipped 45 tierces of mild cured salmon from Seattle, Wash., to Hamburg, Germany, on an export bill of lading to the order of the shipper, "Party to be notified. J. Lindenberger." After the rail shipment, the bill of lading indorsed by the shipper, the invoice, a sight draft in the sum of $14,500 payable to the order of the libelant, and the insurance policies were delivered at Seattle to the libelant-appellee, who credited the shipper with the amount of the draft. The goods were delivered at New York to the steamship Mongolia, operated by the appellant, which sailed from New York February 28, 1920, and arrived at Hamburg, Germany, about April 9, 1920. No other steamship bill of lading was issued for the cargo, but it was sent forward on the original bill of lading, issued at Seattle, which provided: "17. That the property covered by this bill of lading is subject to all conditions expressed in the regular forms of bills of lading in use by the steamship company or vessel at the time of shipment and to all local

rules and regulations at port of destination not expressly provided for by the clauses herein."

On the bill of lading there was a stamped notation: "This bill-of-lading is subject to all clauses appearing on ocean carriers' contract and ocean carriers' bill-of-lading." The regular form of steamship bill of lading then in use provided:

"3. Also, that the value of each package receipted for as above does not exceed the sum of one hundred dollars, unless otherwise stated herein, on which basis the rate of freight is adjusted. * * *

"15. All claims for short delivery, loss, damage, or of whatever nature, must be made in writing to the steamer's agent at the port of destination of the goods within five days after the steamer or lighter finished discharging, and always before the goods are taken delivery of by the consignee; and in case such claims shall not be presented in writing within the time and the place hereinbefore designated, such loss or damage shall be deemed to be waived and the steamer discharged therefrom."

■ These clauses had the effect of incorporating in the contract of carriage the appellant's ocean bill of lading by reference. Cudahy Packing Co. v. Munson S. S. Line, 22 F. (2d) 898 (C. C. A. 2); Lawrence Leather Co. v. Norton Lilly & Co. (D. C.) 15 F.(2d) 101.

The appellant's agent at Hamburg, on April 9, 1920, issued a delivery order for the tierces of salmon to the agents of J. Lindenberger, the notified party under the original bill of lading, without a surrender of the bill of lading and against an indemnity agreement given by the agents of J. Lindenberger. On April 10, the goods were misdelivered. On February 9, 1921, 10 months after the delivery, which is conceded to be a misdelivery, a bill of lading was first presented. In February, 1922, some 20 months after such misdelivery, a claim for damages was made. The libel was filed on January 28, 1922.

The court below held that the notice and limitation of damage clauses were vitiated by the misdelivery, and that the damages in marks, found by the commissioner, were to be converted into dollars at the rate of exchange on the date of misdelivery, and a decree for this sum with interest was entered.

While the misdelivery is not denied by the appellant, it does claim the benefit of the notice and agreed valuation clauses, and insists that it was an error to convert marks into dollars as of the day of such misdelivery and to allow interest from that day rather than the date of the decree. We need but consider the defenses raised by the notice and valuation clauses.

By the original bill of lading, these clauses were incorporated. In the Cudahy Packing Co. and Lawrence Leather Co. Cases, supra, the shippers were given copies of the incorporated bills of lading and thus were given opportunity to know and comply with their terms. We said in the Cudahy Case that the practice of incorporation by reference in those circumstances was reasonable and permissible. Here no ocean bill of lading was issued, but, in these circumstances, we think the shipper, by reference, incorporated such provisions and gave the carrier the benefit of the clauses thus incorporated. The incorporation by reference placed the shipper upon notice. The ordinary ocean bill of lading, in common use and reasonable as to its terms, was thus incorporated by reference. The shipper could have requested and obtained knowledge as to its terms if it so required; having failed to do so, it is bound by the reasonable clauses therein contained.

■ The undertaking by the carrier was to deliver the goods to the rightful holder of the bill of lading in Germany, and the cargo owner, if claiming damages, must give notice there. Questions of interpretation or initial validity of the terms of the bill of lading are governed by the law of the place where the bill of lading is issued, but questions relating to the performance or breach and its effect are governed by the law of the place of performance. The question therefore is whether the claim, since the misdelivery of the goods creating the claim was in Germany, is lost by the failure to give notice of claim as required by the bill of lading and whether the appellant is released, by reason of this agreement, from paying the damages for the loss of the salmon. This liability depends upon the law of Germany. Louis-Dreyfus v. Paterson S. S. Co., 43 F.(2d) 824, 72 A. L. R. 242 (C. C. A. 2). German law is also determinative of the question of whether the cargo owner was excused by the conduct of the carrier in misdelivery from service of the notice of claim under the terms of the bill of lading. The place of performance of the obligation to be excused, that is, notice of claim, is the same as the place of the acts alleged to constitute the excuse, that is, misdelivery, and is governed by the law of the place of performance. Coghlan v. South Carolina R. R. Co., 142 U. S. 101, 111, 12 S. Ct. 150, 35 L.

Ed. 951; Scudder v. Union Natl. Bank, 91 U. S. 408, 413, 23 L. Ed. 245; Louis-Dreyfus v. Paterson, supra; Wharton on Conflict of Laws (3d Ed.) § 427, pp. 929, 930.

The appellee did not offer any proof of the German law supporting the claim that a misdelivery excused the giving of notice of claim or the performance of any of the other terms of the bill of lading. In the absence of such proof, we may not indulge in the assumption that such is the German law. Gerli & Co. v. Cunard S. S. Co., 48 F.(2d) 115, 117 (C. C. A. 2). We may assume that the notice of claim and limitation of liability clauses in the bill of lading are in full effect.

Requirement of a notice of claim in misdelivery cases is in no respect repugnant to public policy, and has been enforced. Georgia, Fla. & Ala. R. R. Co. v. Blish Milling Co., 241 U. S. 190, 36 S. Ct. 541, 60 L. Ed. 948. In that case the suit was for conversion by misdelivery of a cargo of merchandise to one who was not the holder of the bill of lading. The carrier set up noncompliance by the plaintiff with the required notice of claim to be given within 4 months after delivery of the property or, in the case of failure to make delivery, then within 4 months after reasonable time for delivery had elapsed. . The Supreme Court held that these clauses were binding. In Davis v. Roper Lumber Co., 269 U. S. 158, 46 S. Ct. 28, 29, 70 L. Ed. 209, 44 A. L. R. 1357, there was a misdelivery, and the notice clause was again held to be applicable. The court said: "More than nineteen months elapsed before respondent made any claim. There is nothing in the statutory provisions relied on by respondent to excuse its failure to make claim within the time specified in the shipping contract." In American Ry. Express v. Levee, 263 U. S. 19, 44 S. Ct. 11, 68 L. Ed. 140, the limitation of liability clause of $100 per package was held applicable for misdelivery of a trunk. See, also, Manby v. Union Pac. R. Co., 10 F. (2d) 327 (C. C. A. 8); Mallory S. S. Line v. Mitchell, 291 F. 53 (C. C. A. 2); The Lake Gaither (D. C.) 21 F.(2d) 83. In Olivier Straw Goods Corp. v. Osaka Shosen Kaisha, 47 F.(2d) 878, 880, 74 A. L. R. 1378 (C. C. A. 2), a notice clause was under consideration, but there this court was considering a cause of action regarding a breach of warranty that the goods were on board as to which the notice clause did not apply. The court said that the limitation clauses "do not cover a case where the cargo was not taken aboard and was lost or damaged on land."

The shipment in Georgia, Fla. & Ala. R. v. Blish Milling Co., supra, was subject to the Interstate Commerce Act (49 USCA § 1 et seq.). We know of no public policy which forbids steamship carriers to stipulate for a notice of claim and limitation of liability with reference to tortious acts of their employees. The U. S. Shipping Act (46 USCA § 801 et seq.) and the Interstate Commerce Act should have like interpretation. United States Navigation Co. v. Cunard, 284 U. S. 474, 52 S. Ct. 247, 76 L. Ed. 408; Prince Line v. Amer. Paper Exports, 55 F.(2d) 1053 (C. C. A. 2).

Below it was thought that the clauses were vitiated because the appellant's breach "went to the essence of the contract of carriage. * * *" But a carrier, in case of complete and unexplained failure to deliver, is entitled to the benefits of the bill of lading clauses, and no breach of contract could be more material or essential than a failure to deliver the goods at all. In Adams Express Co. v. Croninger, 226 U. S. 491, 33 S. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257, there was an unexplained failure to deliver a diamond ring intrusted to an express company for carriage, and the question presented was whether the $100 limitation was applicable. The court held it was. See Hart v. Pa. R. R., 112 U. S. 331, 340, 5 S. Ct. 151, 28 L. Ed. 717. We have held that, in cases of nondelivery, limitation clauses applied. Hugetz v. Compania Transatlantica (C. C. A.) 270 F. 90; Hohl v. Norddeutscher Lloyd (C. C. A.) 175 F. 544. Where goods are stolen by the employees of a carrier to whom the goods have been intrusted, the carrier is entitled to the benefit of bill of lading clauses. Moore v. Duncan, 237 F. 780 (C. C. A. 6); D'Utassy v. Barrett, 219 N. Y. 420, 114 N. E. 786, 5 A. L. R. 979. There is no justification for a more severe rule to be applied in the case of misdelivery. American Ry. Express v. Levee, 263 U. S. 19, 21, 44 S. Ct. 11, 68 L. Ed. 140; The Cabo Villano, 18 F.(2d) 220 (C. C. A. 2).

The burden of proving compliance with the notice clause was upon the appellee. Cudahy Co. v. Munson S. S. Line, 22 F.(2d) 898 (C. C. A. 2); The General G. W. Goethals, 298 F. 935 (C. C. A. 2); The Persiana, 185 F. 396 (C. C. A. 2). There was no compliance with the requirement to give notice. If the vessel was in fact discharged more than 5 days before the misdelivery, it would be impossible for the consignee to give notice within the time prescribed, but such notice would not thereby be dispensed with; the 5 days' limitation thus prolonged, the clause must be interpreted as requiring the cargo

owner to give notice within a reasonable time. This applies even though it was a shipment to a foreign country. Cudahy v. Munson S. S. Line, 22 F.(2d) 898 (C. C. A. 2); The Turret Crown, 284 F. 439 (C. C. A. 4). In Grace v. Panama R. R., 12 F.(2d) 338, 339, we held that, where the limit of time for giving notice was unreasonable, notice within a reasonable time would be required. There, hides were damaged in transit from Chile to New York. The notice of claim clause provided: "Unless written demand for damage shall be made * * * upon the carrier which actually delivered the goods within 10 days after delivery, all claims for damage shall be taken to have been waived. * * *" Notice was not served until 70 days after the discharge. The contention was made that the 10 days' requirement under the circumstances was unreasonable. We held the claim barred by failure to give notice. See Cudahy v. Munson S. S. Line 22 F.(2d) 898 (C. C. A. 2); The St. Hubert, 107 F. 727 (C. C. A. 3).

Neither the shipper nor the bank nor the consignee made claim to the ownership of the bill of lading until February 19, 1921, 10 months after the arrival of the salmon. Notice of claim was then too late to comply with the requirement of the notice clause.

In The Sarnia (C. C. A.) 278 F. 459, a bill of lading called for a shipment under deck, and the goods were carried on deck and were damaged by reason of their exposed position. We held that this breach of contract deprived the carrier of the valuation clauses in the bill of lading. We do not think the rule of the Sarnia Case should be extended to a case of misdelivery by an agent. We are obliged to hold, by authoritative decisions, that, in the case of a complete and unexplained failure to deliver, this carrier is entitled to the benefit of the bill of lading clauses.

Decree reversed.