**STYLING PLASTICS CO., LTD., Plaintiff,**

**v.**

**NEPTUNE ORIENT LINES, LTD., Inter-ocean Steamship Corp., Seattle Stevedoring Co., Stevedoring Services of America, Does 1 through 20, inclusive, Defendants.**

**No. C–87–0179 RFP.**

United States District Court, N.D. California.

July 31, 1987.

**4.** The court acknowledges the assistance of    Charles Olson in the preparation of this opinion.

Fredrick G. Harris, Walnut Creek, Cal., for plaintiff.

J. Stewart Harrison, Kelly C. Wooster, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants.

### MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

PECKHAM, Chief Judge.

### INTRODUCTION

Plaintiff moves for partial summary judgment and defendant moves for summa-

ry judgment on the issue of whether plaintiff's action is time barred as against any of the defendants. Plaintiff's action was not commenced until November 14, 1986, nearly two years after the "misdelivery" at issue in this case. Defendant, Neptune Orient Lines et al. ("Neptune") contends that the Carriage of Goods by Sea Act ("COGSA"), as well as the express terms of the bill of lading, compel the application of a one-year time limitation wherein suit must be brought after delivery of the goods or the date when the goods should have been delivered.

Plaintiff asserts that California law applies pursuant to California Code of Civil Procedure section 338 which provides a three year statute of limitation in cases of conversion. Plaintiff also contends that conversion is a "deviation" which deprives the carrier and his agents of the benefits of the bill of lading. Finally, plaintiff appears to argue that the bill of lading is an adhesion contract and is therefore unenforceable.

## STATEMENT OF FACTS

The parties have stipulated to the following facts. Two ocean containers of hand puppets were shipped by plaintiff from Taiwan to Oakland, California, aboard the Neptune Orient Lines under a bill of lading. Defendant Interocean Steamship Corporation acted as local agent for Neptune. Defendant Stevedoring Services of America acted as discharging stevedore and agent for Neptune.

The vessel arrived in Oakland and the two containers were discharged from the vessel to the pier by Stevedoring Services of America on November 21, 1984 and placed in the container terminal yard to await pick up. Stevedore Services did not receive the original or a copy of the bill of lading. On November 23, 1984 two truckers from Express Freight Systems arrived at the Oakland pier and presented a custom's clearance document describing the containers and the contents. According to the declaration of Stevedore Services terminal manager, Jacques Lira, the information on the document presented by the truckers was checked against the information contained in the Consignee's Receipts For Delivery documents previously provided to Stevedore Services by Interocean.

The customary procedure for delivering cargo on behalf of Neptune required a customs document and a paid delivery order. If the trucker did not have a paid delivery order, a verbal release from Interocean's freight cashier consenting to the release was sufficient. The Express Freight System truckers did not present a paid delivery order. Mr. Lira called Interocean's office but he stated in his declaration that there was no response. Either no one answered or he did not talk to a freight cashier. He stated that if someone had told him the charges were not paid, he would not have delivered the containers. Mr. Lira authorized the terminal clerk to deliver the cargo.

Plaintiff brought suit against the carrier, Neptune, its agent Interocean, and Stevedore Services of America over one year after the date the cargo was delivered or should have been delivered.

The pertinent sections of the bill of lading provide the following:

A) Subcontracting

iii) If an action for loss or damage is brought by the merchant, by any insurer against charterer, underlying carrier, servant, *agent*, independent contractor, or subcontractor, including *Stevedores*, Carpenters and Watchmen, such persons shall be entitled to avail himself of the defenses and limits of liability which the carrier is entitled to evoke under this contract. (emphasis added).

B) Carrier's Liability

i) The provisions of [the Carriage of Goods by Sea Act of the United States] shall govern before the shipment is loaded on and *after* it is discharged from the vessel while the shipment is in the custody and possession of the carrier in a container yard or terminal. (emphasis added).

C) Notice of Loss, Time Bar

ii) The Carrier shall be discharged from all liability whatsoever in respect

of the Goods *unless suit is brought within one year of their delivery or the date when they should have been delivered.* (emphasis added).

## DISCUSSION

▇ Summary judgment is proper when there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the moving party, the movant is clearly entitled to prevail as a matter of law. *See Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir. 1981); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *See Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

## I. *COGSA and the Bill of Lading Compel Application of a One-Year Time for Suit*

▇ The Carriage of Goods by Sea Act provides in relevant part:

Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to the provisions of this chapter.

46 U.S.C. section 1300.

[T]he carrier and the ship shall be discharged from all liability in respect of loss or damage *unless suit is brought within one year* after delivery of the goods or the date when the goods should have been delivered....

46 U.S.C. section 1303(6) (emphasis added).

The COGSA provision expressly grants the protection of a time limitation from suit to *carriers* of cargo by sea. The Act refers to the "carriage of goods" which, pur-

suant to section 1301, refers to the period of time when the goods are loaded on to the ship up until the time when they are discharged from the ship. The Act does not itself extend these protections to the time period after discharge from the ship or to non-carriers.

However, the Act does provide that:

Nothing contained in this chapter shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and *subsequent* to the discharge from the ship on which the goods are carried by sea.

46 U.S.C. section 1307 (emphasis added).

The extension of COGSA may be contractually accomplished by the terms of the bill of lading, which may incorporate the time limitation for suit from the COGSA provision. The bill of lading, as in this case, may extend certain immunities, exemptions, and limitations to certain non-carriers as long as the bill of lading clearly and expressly extends such COGSA provisions to a non-carrier who is an agent of the carrier. This will be a valid derogation of the common law and will be given effect. *See Grace Line, Inc. v. Todd Shipyard Corp.,* 500 F.2d 361, 367, 371 (9th Cir.1974), (citing *Herd v. Krawill Machinery Corp.,* 359 U.S. 297, 304–305, 79 S.Ct. 766, 770–71, 3 L.Ed.2d 820 (1959)).

Although COGSA does not itself extend protection to non-carriers, in this case the bill of lading contains provisions which extend the carrier's protection to its agents and stevedores. Such a provision is called a "Himalaya Clause" [1] and has been held to be a valid contractual extension by the Ninth Circuit. *See Tessler Brothers Ltd. v. Italpacific Line,* 494 F.2d 438 (9th Cir. 1974); *Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361 (9th Cir.1974).

In *Herd v. Drawill Machinery Corp.,* 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820

---

**1.** The term derives from an English case involving the vessel "HIMALAYA". *See Brown &*

*Root, Inc. v. M/V Peisander,* 648 F.2d 415, 417 n. 5 (5th Cir.1981).

(1959), the Supreme Court considered the issue of extension of COGSA limitations to stevedores. In *Herd,* no reference to agents or independent contractors of the carrier were made in the bill of lading. The court found that the bill of lading showed no intention to limit the liability of stevedores.[2] The Ninth Circuit in *Tessler Brothers Ltd. v. Italpacific Line,* 494 F.2d 438 (9th Cir.1974), stated: "We and other courts interpret [*Herd*] to mean that under certain circumstances parties to a contract of carriage may limit a stevedore's liability, but only if the intent to do so is clearly expressed." *Id.* at 442.

The Ninth Circuit stated in *Grace Line Inc. v. Todd Shipyards Corp.,* 500 F.2d 361 (9th Cir.1974): "[T]he *Herd* opinion might be interpreted to mean that a bill of lading, if it *clearly and expressly* extends a COGSA exemption, immunity or limitation to a non-carrier who is an agent of the carrier, is a valid derogation of the common law and will be given effect." *Id.* at 371. The court goes on to quote from *Herd:*

> '[C]ontracts purporting to grant immunity from or limitation of liability must be strictly construed and limited to intended beneficiaries, for they are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, *unless the clarity and the language used expresses such to be the understanding of the contracting parties.*'

*Id.* at 371 (quoting *Herd,* 359 U.S. at 304–305, 79 S.Ct. at 770–771).

Like the case before this court, *Timco Engineering, Inc. v. Rex & Co.,* 603 F.Supp. 925 (E.D.Penn.1985), involved an action by the shipper of goods against the carrier and stevedore for misdelivery of cargo to a trucking company. The action was brought almost three years after the alleged misdelivery. The bill of lading contained a Himalaya clause requiring suit within one year. The court held the one

year limitation period valid. "[T]he bill of lading expressly makes applicable the provisions of COGSA, and it expressly extends to stevedores those statutory and contractual limitations and exonerations from liability that would be available to the carrier." *Id.* at 928.

■ The plaintiff contends that the bill of lading must specifically refer to conversion or gross neglect to meet the *Herd* requirement of express intent. However, the reason the Court in *Herd* did not extend the limitations and defenses of the carrier to the stevedores was because the bill of lading did not expressly mention the stevedores. The Ninth Circuit cases relying on *Herd* have held that where the agents and stevedores are expressly mentioned in the bill of lading this is adequate to extend the carrier's defenses and limits of liability to his agents. *See Tessler Brothers Ltd. v. Italpacific Line,* 494 F.2d 438 (9th Cir.1974); *Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361 (9th Cir.1974). The Eleventh Circuit has stated: "It is sufficient that the terms express a clear intent to extend benefits to a well-defined class of readily identifiable persons.... No further degree of clarity is necessary." *Certain Underwriters at Lloyds' v. Barber Blue Sea Line,* 675 F.2d 266 (11th Cir.1982).

■ In Neptune's bill of lading an express intention is stated which extends to the carrier's agents and stevedores the contractual defenses and limits of liability which the carrier is entitled to. The one year time limit for suit for loss or damage to goods is expressly mentioned in the bill of lading under section 9(ii), as well as in COGSA section 1303(6). Therefore, the carrier's agents and stevedores are protected by the same one year time limitation for suits as provided in COGSA.

The plaintiff further contends that where a conversion has taken place contractual

---

**2.** The Court stated in *Herd:* "If such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract. Since they did not do so, it follows that the provisions of the bill of lading did 'not cut off [respondent's] remedy

against the agent that did the wrongful act.'" *Herd v. Krawill Machinery Corp.,* 359 U.S. 297, 302, 79 S.Ct. 766, 770, 3 L.Ed.2d 820 (1959) (quoting *Sloan Shipyards Corp. v. Emergency Fleet Corp.,* 258 U.S. 549, 568, 42 S.Ct. 386, 388, 66 L.Ed. 762 (1922)).

limitations shortening the time for bringing suits are barred by California Commercial Code section 7204.[3] The pertinent portions of section 7204 state:

> (2) Damages may be limited by a term in the warehouse receipt or storage agreement *limiting the amount of liability* in case of loss or damage.... No such limitation is effective with respect to the warehousemen's liability for *conversion to his own use.*
>
> (3) *Reasonable provisions as to the time and manner of presenting claims* and instituting actions based on bailment may be included in the warehouse receipt or tariff.

California Commercial Code section 7204(2), (3) (emphasis added).

Plaintiff relies on *Continental Metals v. Municipal Warehouse Company*, 112 Misc.2d 923, 447 N.Y.S.2d 849 (1982), *aff'd*, 92 A.D.2d 477, 459 N.Y.S.2d 406 (1983), which is the sole case that construes section 7204 to extend prohibitions on reasonable time to sue limitations in cases of conversion.

There are strong policy considerations supporting inclusion of the conversion exception in subsection 7204(2). Without a limit of liability there are those who would be encouraged to convert goods, knowing that their potential liability will be limited to the amount agreed to under the contractual limitation contained in the agreement.

■ However, subsection 7204(3) gives no such encouragement to the bailee. If he converts the goods, he is still liable for their entire value so long as the bailor institutes an action within the agreed upon time. "The purpose of subsection 7204(3) is not to limit liability, but to prevent litigation of stale claims, penalize dilatoriness and to serve as a measure of repose." *Amenip Corporation v. Ultimate Distribution Systems, Inc.*, 200 N.J.Super. 109, 490 A.2d 371, 374 (1985) (citing *Ochs v. Federal Ins. Co.*, 90 N.J. 108, 112, 447 A.2d 163 (1982)).

Clearly the legislature considered the subject of conversion in enacting the stat-

ute. It inserted a specific exception for conversion into section 7204(2). The legislature's omission of a like exception from section 7204(3) must be viewed as intentional. "When the legislative branch has thus dealt with the matter, it does violence to our governmental division of functions and thus violates established ... legal principles to create a judicial exception as did *Continental Metals.*" *Refrigeration Sales Co., Inc. v. Mitchell-Jackson, Inc.*, 575 F.Supp. 971, 975 (N.D.Ill.1983), *aff'd*, 770 F.2d 98 (7th Cir.1985).

■ Thus, even assuming that state law applies in this case, this court will not indulge a forced reading of subsection 7204(3) to imply the exception of conversion where the legislature has intentionally not done so. Furthermore, this court finds that the one year time limitation is "reasonable" within the meaning of subsection 7204(3). The court in *Grace Line* held valid a Himalaya clause which extended to the carrier's agents a one year time limitation for suit:

> COGSA indicates the congressional determination that one year is a *reasonable* time limit for instituting suit against a carrier, and we see no factors necessitating more time for suit against the carrier's agents. Since the extension of section 3(6), 46 U.S.C. section 1303(6) to agents of the carriers is clear and express, and since it creates a reasonable limitation on the common law liability of agents, and since there is no binding authority for holding such clauses void, we uphold the validity of this portion of the bill of lading.

*Grace Line*, 500 F.2d at 375 (emphasis added).

A one year time limitation is sufficient time for the effective pursuit of a judicial remedy, therefore, this court does not find that a one year limitation is unreasonable.

II. *Misdelivery of Goods is not a "Deviation" Which Invalidates the Terms of the Bill of Lading*

■ The plaintiff contends that misdelivery is a fundamental breach of contract

---

**3.** California Commerical Code section 7204 is essentially identical to U.C.C. section 7–204.

which deprives the carrier of protections contained in the bill of lading. The term "deviation" has particular legal significance in maritime cases. Traditionally, "deviation" referred to geographic deviation. A shipper would insure his cargo based upon a particular geographic route. Thereafter, the vessel, making a geographic deviation, was undertaking an entirely different voyage from the one originally contemplated by the parties. This left the shipper with unknown risks against which he had not insured. As a result the courts required the deviated carrier to assume the function of insurer, thus extinguishing any limitation of liability provisions in the contract of carriage.

The concept of "deviation" has come to encompass a number of different acts on the part of a carrier. *Spartus Corporation v. S/S Yafo*, 590 F.2d 1310 (5th Cir. 1979), which the plaintiff cites to support his position, states:

> As applied in admiralty law, the term "deviation" was originally and generally employed to express the wandering or straying of a vessel from the customary course of the voyage, but in the course of time it has come to mean any variation in the conduct of a ship in the carriage of goods whereby the risk incident to the shipment will be increased, such as carrying the cargo on the deck of the ship contrary to custom and without the consent of the shipper, delay in carrying the goods, failure to deliver the goods at the port named in the bill of lading and carrying them farther to another port, or bringing them back to the port of original shipment and reshipping them. Such conduct has been held to be a departure from the course of agreed transit and to constitute a "deviation" whereby the goods have been subjected to greater risks, and, when lost or damaged in consequence thereof, clauses of exceptions in bills of lading *limiting liability* cease to apply.

*Id.* at 1313 (emphasis added) (quoting *G.W. Sheldon & Co. v. Hamburg Amerikanische Packetfahrt A.G.*, 28 F.2d 249, 251 (3rd Cir.1928)).

*Spartus* involved a per-package limitation of liability, and *not* a time limitation for suit. However, there is ample authority for the proposition that misdelivery does not constitute a "deviation" which would thereby abrogate the time limitation terms of the contract of carriage. A case very similar to the one before this court, *Timco Engineering, Inc. v. Rex & Co. Inc.*, 603 F.Supp. 925 (E.D.Penn.1985), involved an alleged misdelivery. In *Timco*, the bill of lading included a Himalaya clause granting stevedores the one year protection accorded the carrier. The court held the alleged misdelivery did *not* invalidate the one year time limitation. *Id.* at 928.

In *Hellyer v. Nippon Yesen Kaisya*, 130 F.Supp. 209 (S.D.N.Y.1955), the court stated that "[t]he authorities, prior to the passage of the Carriage of Goods by Sea Act, were in accord that non-delivery or mis-delivery did not abrogate the time limitation terms of the contract of carriage." *Id.* at 211 (citing *Bank of California, N.A. v. International Mercantile Marine Co.*, 64 F.2d 97 (2nd Cir.1930), *cert. denied*, 290 U.S. 649, 54 S.Ct. 66, 78 L.Ed. 563 (1933)). " 'Misdelivery' is treated the same as non-delivery and, therefore, the statute of limitation herein is a complete defense to plaintiff's action.' " *Commodity Service Corporation v. Furness Withy & Co., Ltd.*, 1964 A.M.C. 760, 762 (1963). In *Italia Di Navigazione, S.P.A. v. M.V. Hermes I*, 724 F.2d 21 (2nd Cir.1983), the court held that an alleged theft of goods while on the vessel did not warrant deviation from the one year statute of limitations contained in COGSA. The court emphasized the policy distinctions between a dollar limitation on liability and a time to sue limitation.

Claims for deviation and conversion arising from misdelivery were also made in *Malaysia Overseas Lines, Ltd. & S.S. Oriental Hero, Her Engines, Etc.*, 1976 A.M.C. 143 (S.D.N.Y.1985). The plaintiff brought suit after the expiration of time for suit provided for in the bill of lading. The court stated that "[i]t is well established that misdelivery of marine cargo does not deprive a carrier of the benefit of the bill of lading's provisions, including a time for suit limitation." *Id.* at 145 (citing

*Bank of California, N.A. v. International Mercantile Marine Co.,* 1933 A.M.C. 719, 64 F.2d 97 (2nd Cir.1933), *cert. denied,* 290 U.S. 649 (1933)). The court went on to say "[m]isdelivery has been held not to constitute a deviation abrogating the terms and conditions of the bill of lading." *Id.* at 145 (citing *David Crystal, Inc. v. Cunard S.S. Co.,* 223 F.Supp. 273 (S.D.N.Y., 1963), *aff'd,* 339 F.2d 295 (2nd Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965)). The court, in *Malasia,* relying on the Second Circuit's decision in *Bank of California v. International Mercantile Marine Co.,* stated that "misdelivery is tantamount to non-delivery of cargo and, although it breaches the contract of carriage, it does not vitiate its terms:

> '[A] carrier, in case of complete and unexplained failure to deliver, is entitled to the benefits of the bill of lading clauses, and no breach of contract could be more material or essential than a failure to deliver the goods at all.... *There is no justification for a more severe rule to be applied in the case of misdelivery.*'

*Id.* at 145 (quoting *International Mercantile Marine Co.,* 64 F.2d at 99)).

Many of the cases the plaintiff cites to support the proposition that conversion is an unreasonable deviation which deprives the defendant of the benefit of the time limitation for suit afforded under the bill of lading are inapposite. *Spartus,* as discussed above, deals with a limitation on the amount of liability for goods shipped and not a time limitation for suit. The court in *Minex v. International Trading Company of Virginia,* 303 F.Supp. 205 (E.D.Va.1969), actually held that mere negligent stowage of cargo did *not* constitute a deviation which would deprive the parties of the benefit of the statute of limitations afforded under COGSA. *Cerro Sales Corporation v. Atlantic Marine Enterprises, Inc.,* 403 F.Supp. 562 (S.D.N.Y.1975), involved a ship fire at sea which caused a subsequent delay in the delivery of goods. The court there held that the suit was *not* time barred by COSGA because the shipowner's fault or knowledge of the ship's defective condition constituted an unreasonable deviation which deprived the shipowner of the protection of the one-year statute of limitations in COGSA. *See id.* at 566. Plaintiff cites *C.A. Articulos Nacionales de Goma v. M/V Aragua,* 756 F.2d 1156 (5th Cir. 1985), which involved a limitation on the amount of liability and *not* a time limitation for suit. Although *Cerro* lends some support to the plaintiff's position, the weight of precedent holds that a reasonable time limitation for suit will be upheld where a misdelivery occurs.

■ Furthermore, even if misdelivery were to constitute a "deviation", a reasonable time limitation for suit (unlike a limitation on liability) would be enforceable. In *Francosteel Crop. v. N.V. Nederlandsch Amerikaansche, S.M.,* 249 Cal.App.2d 880, 57 Cal.Rptr. 867 (1967), *cert. denied,* 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 282 an action by a shipper for damages based on the carrier's breach of the stowage provisions of a clean bill of lading was brought approximately two years after delivery of the damaged goods. The court rejected the argument as to deviation and upheld the carrier's contention that COGSA barred the action under the one year time limitation. *Id.* 57 Cal.Rptr. at 875. "The development of worldwide instant communications obviates any requirement for years of waiting for reports on the ship or cargo unheard of between far distant ports." *Id.* at 881. The court went on to state:

> [I]nsofar as a deviation, or a breach of the contract which would at common law render the contractual provisions void, contributes to or causes a loss, the carrier cannot rely on provisions which permit it to escape liability for damages resulting therefrom. *It does not, however, necessarily follow that a provision which reasonably limits the time within which the shipper or consignee may pursue his remedies, is also invalid.*

*Id.* at 880 (emphasis added).

III. *The Bill of Lading is not an Impermissible Adhesion Contract.*

■ "Where there is a gross disparity of bargaining power between two parties to a contract such that one party has

no choice but to adhere to unfavorable and unfair terms, those terms will not be enforced against him unless he has given his understanding consent to be bound." *Grace Line, Inc. v. Todd Shipyards Corp.,* 500 F.2d 361, 371 (9th Cir.1974) (citing *Henningsen v. Bloomfield Motors,* 32 N.J. 358, 161 A.2d 69 (1960)). Although the content of ocean bills of lading are generally within the carrier's control, the shipper of cargo, "is not in the position of the ordinary man facing an enormous impersonal industry." *Id.* at 372, 161 A.2d 69. The court in *Grace Line* addressing the same question as in this case stated: "We are not moved by [the] adhesive character [of the bill of lading] to interfere with the freedom of contract to the extent of refusing entirely to give effect to the Himalaya clause." *Id.* This court finds that although the bill of lading must be strictly construed against Neptune, the party that drafted it, Styling Plastics, is not a naive party to the agreement in question and therefore Styling Plastics must act in accord with the terms of the agreement.

## CONCLUSION

There is no genuine issue of material fact and defendants are entitled to a judgment as a matter of law. Their motion for summary judgment is granted. Plaintiff's motion for partial summary judgment is denied because the suit is time-barred.

IT IS SO ORDERED.